426 So.2d 705 (1982)
Billie M. POSEY
v.
BOARD OF TRUSTEES, STATE EMPLOYEES GROUP BENEFITS PROGRAM, et al.
No. 82 CA 0345.
Court of Appeal of Louisiana, First Circuit.
December 21, 1982.
Rehearing Denied February 17, 1983.
Writ Denied February 23, 1983.
Allen M. Posey, Jr., Baton Rouge, for plaintiff-appellant, Billie M. Posey.
Tommy D. Teague, La. Dept. of Justice, Baton Rouge, for defendant-appellee Board of Trustees, State Employees Group Benefit Program, and CNA.
Before EDWARDS, WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
Billie M. Posey (plaintiff) appeals from an adverse decision of the trial court which dismissed her claim against the Board of Trustees, State Employees Group Benefits *706 Program[1] (defendant) for benefits allegedly due under a group health benefits program to which she belonged.
The facts are not contested. The pretrial order contains the following stipulations, which were entered into by the parties and read into the record at trial:
"A. Effective May 1, 1980, plaintiff, Billie M. Posey, was covered by a policy of health insurance issued to her by defendant, Board of Trustees State Employees Group Benefits Program. The policy provisions of that health insurance policy are more fully set out in the State of Louisiana Employees Uniform Group Benefits Program Booklet, which will be introduced as an Exhibit at trial.
B. On April 29, 1980, plaintiff, Billie M. Posey, because of a problem with dysmenorrhea, consulted her physician, Dr. William C. Haile, M.D., who on that date conducted an examination of plaintiff and determined that she had a second degree uterine prolapse and second degree unterine (sic) retroversion.
C. That plaintiff was not referred to Dr. Haile by any other physician for treatment or diagnosis of the above described conditions nor did Dr. Haile refer plaintiff to any other physician on or before May 1, 1980, for treatment of the above described condition. Plaintiff consulted no other physicians for or concerning this condition.
D. On June 16, 1980, Dr. Willaim (sic) C. Haile performed an abdominal hysterectomy on plaintiff at Woman's Hospital, Baton Rouge, Louisiana.
E. If plaintiff's condition of uterine prolapse and uterine retroversion for which she underwent surgery on June 16, 1980, is determined not to be a `pre-existing condition' as that term is defined in plaintiff's policy of insurance with defendant, then plaintiff is entitled to be paid by defendants the sum of Two Thousand One Hundred Sixty-seven and 57/100 ($2,167.57), that sum being the amount of eligible benefits payable by defendants. This does not take into account plaintiff's claim for penalties pursuant to LA R.S. 22:657.
F. That on September 19, 1980, defendant wrote to Dr. William C. Haile seeking the following information concerning plaintiff's abdominal hysterectomy of June 16, 1980:
1. When was this condition first diagnosed?
2. What was the first date of treatment and when was surgery recommended?
3. Was she referred to you by another physician? If so, please advise the name and address of the physicians.
4. In response to the questions propounded by defendant, Dr. Haile answered as follows:
a. When was this condition first diagnosed: April 29, 1980.
b. What was the first date of treatment and when was surgery recommended: FIRST DATE OF TREATMENTDATE OF SURGERY 6/16/80, SURGERY RECOMMENDED: 4/29/80.
c. Was she referred to you by another physician: NO
G. The applicable pre-existing condition clause of the health insurance policy furnished by defendant and providing coverage for plaintiff is found on page B-5 of the State of Louisiana Employees Uniform Group Benefits Program Booklet, which clause provides as follows:
A physical injury or sickness will be considered a pre-existing condition if treatment was received or if drugs were prescribed or taken, during the 12-consecutive month period immediately preceding the effective date of coverage. No benefits will be payable *707 for a pre-existing condition until the covered person has been a participant in the plan for 24 consecutive months."
The issue is a legal one: Does the definition of the word "treatment," as used in the pre-existing condition limitation of defendant's benefit plan, include the "diagnosis" of an illness, when neither term is defined in defendant's benefit plan? If "treatment" did not include "diagnosis" under the facts of this case, then an additional issue is whether defendant's actions in denying plaintiff's claim were unjust and unreasonable under the provisions of La.R.S. 22:657, making it liable for statutory penalties and attorneys fees.
Karen Ann Link, defendant's claims supervisor, testified that she made the decision to deny plaintiff's claim for the sole reason that Dr. William C. Haile had diagnosed the problem two days prior to the effective date of the benefit plan. Ms. Link's definition of "treatment" included "diagnosis," but she admitted that neither "treatment" nor "diagnosis" was defined in the benefit plan. Succinctly stated, defendant rejected plaintiff's claim for health and insurance benefits solely upon its interpretation that the "treatment" of her condition included the "diagnosis" of that condition and thus concluded that the surgery she had on June 16, 1980, was for a pre-existing condition. This interpretation was made notwithstanding Dr. Haile's opinion that "treatment" had a separate and distinct meaning from "diagnosis."
Plaintiff calls our attention to several provisions in the benefit plan where the terms "diagnosis" and "treatment" are used conjunctively:
"HOSPITAL BENEFITS
"When accidental bodily injury or sickness requires the Covered Person to be confined within a hospital as a resident patient, such confinement commencing while this coverage is in force, the Program will pay the reasonable expense actually incurred for the following hospital services when consistent with the diagnosis and treatment of the condition for which hospitalization is required, but only when such services are furnished and charged for by said hospital and administered and used during such confinement." (Emphasis added)
And,
"DIAGNOSTIC X-RAY AND LABORATORY BENEFITS
"When accidental bodily injury or sickness requires the Covered Person to incur expense for X-Ray or Laboratory Examination for diagnosis of a covered injury or sickness, or routine Pap Smear, and such person is not confined in a hospital as a resident patient at the time such expense is incurred, the Program will pay the reasonable expense actually incurred for X-Ray or Laboratory procedures made or recommended by a Physician while this coverage is in force as to such person, but not to exceed: (1) $75.00 for all such expenses incurred in connection with any one injury; or (2) $75.00 for all such expenses incurred in connection with all sicknesses during any one calendar year." (Emphasis added)
Plaintiff argues that, inasmuch as the terms "treatment" and "diagnosis" are not specifically defined, the language of the benefit plan clearly contemplated that the terms would have separate and distinct meanings, and calls to our attention Article 1948 of the Louisiana Civil Code.[2]
It is also well settled that any ambiguity in an insurance contract is to be construed against the insurer and in favor of the insured. Carney v. American Fire & Indem. Co., 371 So.2d 815 (La.1979). Plaintiff asserts that there was no ambiguity since the term "treatment" in its every day sense and as used in the benefit plan meant something other than "diagnosis," and it did not include within its definition the "diagnosis" of an illness. Dr. Haile stated that in his opinion, "treatment" did not include "diagnosis." If, however, this pre-existing condition *708 provision of the benefit plan was susceptible to more than one interpretation, plaintiff says it was ambiguous. Dr. Haile also stated that "treatment" meant:
"... the correction of some condition, or the attempt to correct...,"
and that,
"... you can diagnose something and let's say that the patient refused treatment or anything like that ... you can have a diagnosis and certainly have no treatment."
Since "diagnosis" and "treatment" were used conjunctively elsewhere in the benefit plan, we find the most reasonable interpretation is that "treatment" did not include "diagnosis." Also, we agree with plaintiff that at the very least the term "treatment" was ambiguous and required a construction which afforded coverage.
Defendant calls to our attention cases emanating from the Third Circuit for the proposition that treatment includes diagnosis, i.e., Poche v. Louisiana Health Services & Indem., 391 So.2d 17 (La.App. 3rd Cir. 1980), writ refused, 396 So.2d 885 (La.1981); Lucito v. Louisiana Hospital Service, Inc., 392 So.2d 700 (La.App. 3rd Cir.1980); and Baque v. Pan-American Life Insurance Company, 313 So.2d 293 (La.App. 3rd Cir. 1975), writ refused, 318 So.2d 52 (La.1975). We have reviewed these cases, and all are inapposite on the facts. In these cases, the plaintiffs were attempting to get coverage under their health and accident policies for diagnostic tests. It was held that diagnostic tests may properly be regarded as treatment. In each case, it was found that the term "treatment" was ambiguous and did include diagnostic tests and studies. None of these cases found it expedient to define the term "treatment," although in Baque, supra, the court stated:
"Although the Louisiana jurisprudence reveals no case defining `treatment', we find applicable the following definition of that term by the courts of sister states: `In common parlance and often in the law, treatment is the broad term covering all the steps taken to effect a cure of the injury or disease. It includes examination and diagnosis, as well as application of remedies, ...'" (Citations omitted) 313 So.2d at 297
Our review of the jurisprudence from other states, however, has uncovered a case directly on point, which is adverse to the language set forth above from Baque. In Mutual Life Insurance Company of New York v. Bishop, et al., 132 Ga.App. 816, 209 S.E.2d 223 (1974), remarkably similar to the case before us, the Georgia Court of Appeals was called upon to interpret a policy provision which excluded costs for medical care and treatment received within three months of the effective date of the policy. The plaintiff had made two visits to a physician and had undergone certain pre-operative examinations prior to the effective date, which resulted in a diagnosis of a condition. Notwithstanding the limitation, the court held that the policy covered the costs of the operation which occurred after the effective date of the policy.
Our facts are clear. Plaintiff went to Dr. Haile on April 29, 1980. At that time, Dr. Haile, after conducting a complete physical examination, diagnosed her condition. He prescribed no drugs. He did not treat her. He made no diagnostic studies. Her benefit plan became effective on May 1, 1980. Her surgery was on June 16, 1980. Defendant's benefit plan did not exclude coverage for plaintiff's medical and hospital expenses rendered after the effective date of the benefit plan.
Plaintiff also argues that defendant did not have a just and reasonable ground for failing to pay her expenses and, therefore, should be subjected to the statutory penalties and attorney fees as provided by La. R.S. 22:657.
The provisions of this statute are penal in nature and must be strictly construed. Killebrew v. Abbott Laboratories, 352 So.2d 332 (La.App. 4th Cir.1977), writ granted, 354 So.2d 205 (La.1978), affirmed, 359 So.2d 1275 (La.1978). These provisions may not be imposed unless the refusal to pay is clearly arbitrary and capricious. Gleason v. Bankers Life & Casualty Company, *709 147 So.2d 86 (La.App. 2nd Cir.1962). The facts convince us that defendant was not dilatory in investigating this claim and did not place a strained or unreasonable interpretation upon the language of the benefit plan, especially when considering the Third Circuit cases previously mentioned which equate diagnostic tests to "treatment." This case presented a matter of first impression. See Valladares v. Monarch Insurance Company, 282 So.2d 569 (La. App. 4th Cir.1973), writs refused, 284 So.2d 603, 604 (La.1973), where the court stated:
"Certainly in light of the fact that a bona fide dispute existed between the litigants and that this case presents a matter of first impression in our jurisprudence, defendant acted reasonably in refusing to pay this claim. While we disagree with the interpretation defendant placed on the policy we do not find defendant's action violative of the above quoted statute. Songe v. Tennessee Life Insurance Company, La.App., 260 So.2d 149 (1972); Tingle v. Reserve Life Insurance Company, La.App., 260 So.2d 333 (1972)." 282 So.2d at 573
Under these circumstances, we find that defendant's actions were reasonable and neither arbitrary nor capricious and did not result in a violation of La.R.S. 22:657.
Accordingly, we hold that the benefit plan in question afforded plaintiff coverage for her claim and that the decision of the trial court must be reversed. There is judgment herein in favor of plaintiff and against defendant for the amount of the stipulated claim, which was $2,167.57, with legal interest from date of judicial demand until paid.
Costs, amounting to $378.89 are taxed to defendant.
REVERSED AND RENDERED.
NOTES
[1] CNA was cited as a defendant and answered the petition jointly with this defendant but was not dismissed in the signed judgment. The evidence indicated that CNA merely administered the State Employees Group Benefits Program.
[2] Art. 1948. Reference to other words in same contract. When there is a doubt as to the true sense of the words of a contract, they may be explained by referring to other words or phrases used in making the same contract.