GUIDRY, Judge.
Plaintiff, Mary K. Hay, instituted this suit against South Central Bell Telephone Company seeking death benefits under their employee benefits plan for the death of her husband.
Plaintiff was married to Dwight S. Hay at the time of his death. Mr. Hay was an employee of South Central Bell. The Bell benefits plan provided in Section 7 for death benefits. The provision states in pertinent part:
“In the event of death on or after July 18, 1974, by accident, the maximum Accident Death Benefits specified in Paragraph 1 of this Section, or in the event of death by sickness on or after the above date, the maximum Sickness Death Benefits specified in Paragraph 2 of this Section, shall be paid, subject to the provisions of sub-paragraph (c) of this Paragraph 4, to the spouse of the deceased employee if living with him at the time of his death, ...” (Emphasis ours)
The various committees which administer the plan denied Mrs. Hay’s claim for death benefits on the ground that Mrs. Hay was not living with Mr. Hay at the time of his death as required under Section 7. Mrs. Hay filed suit seeking a reversal of the committee’s final decision denying her claim.
At trial, the following facts were adduced regarding this issue and are substantially uncontradicted.
Mr. and Mrs. Hay were married in 1948. On June 29, 1977, Mrs. Hay left the matrimonial domicile located in Pineville and moved into an apartment in the same city. On July 27, 1977, Mrs. Hay filed suit for separation from bed and board on the grounds of cruelty. Mrs. Hay alleged in her petition that Mr. Hay had struck her on several occasions and she feared for her safety.
On November 23, 1977, Mr. Hay invited Mrs. Hay to the family home. Mr. Hay had suffered a heart attack and had been off work for some time. Mrs. Hay met with him and a reconciliation was discussed. Mrs. Hay agreed to spend Thanksgiving day with him. After enjoying Thanksgiving dinner together, Mrs. Hay agreed to move back to the family home. At approximately 3:00 p.m. that same day, Mrs. Hay left the home and returned to the apartment complex where she had been residing in order to give notice to the manager that she would be moving out of her apartment. Mrs. Hay testified that she intended to physically move back to the family home on November 27, 1977, with the help of her two sons who would be returning from offshore work that day.
On the morning of November 26, 1977, Mrs. Hay spoke with Mr. Hay by telephone. Mr. Hay died of a heart attack that same afternoon.
A Bell representative visited Mrs. Hay on November 27th to explain to her the benefits she was entitled to. The representative told Mrs. Hay that she was entitled to $32,000.00 in life insurance and a pension of $169.16 a month. Mrs. Hay was informed that she was not entitled to the death benefits of approximately $16,000.00 because she was not living with Mr. Hay at the time of his death.
On January 3, 1978, the Louisiana Benefit Committee recommended that the death benefits not be paid on the ground that Mrs. Hay was not living with her husband at the time of his death. On January 25, 1978, the Employee Benefit Committee denied the benefits for the same reason.
*1358 On November 27, 1978, Mrs. Hay filed this suit. Upon receipt of the suit, the fiduciaries of the benefits plan advised Mrs. Hay that they would treat her suit as a claim and again review the matter. The committee reviewed the matter and again denied her claim. On June 12, 1979, a review committee met and considered additional information furnished by Mrs. Hay’s attorney as well as the evidence already gathered by the other committees; the review committee denied her claim.
On August 23, 1983, the trial court rendered judgment in favor of Bell dismissing this suit at plaintiffs cost. Plaintiff appeals the trial court’s judgment.
On appeal, plaintiff argues the trial court erred in finding that she was not living with Mr. Hay at the time of his death. Secondly, plaintiff contends the trial court committed error in finding that the various benefit committees that reviewed her claim had not been arbitrary and capricious in their denial of these benefits.
In his written reasons for judgment, the learned trial judge stated:
“The defendant cites the case of Glover v. South Central Bell Telephone Co., 644 F 2nd 1155 (5th Cir.1981)[1] which involved the same private pension plan as involved in the present case. The court stated as follows the applicable rule regarding the scope of judicial review of the decisions by the committees which administer the plan:
‘The limited scope of judicial review of the decisions of a committee administering a private pension plan recognized by Louisiana jurisprudence is in accord with the general rule elsewhere: The committee’s determination is conclusive so long as the evidence before the committee was sufficient to decide the plaintiff’s claim and the committee’s action was not arbitrary, capricious, or in bad faith. Davis v. Humble Oil & Refining Co., 283 So.2d 783, 793 (La.App. 1st Cir.1973). See also Golden v. Kentile Floors, Inc., 512 F.2d 838, 847 (5th Cir.1975); Marsh v. Greyhound Lines, Inc., 488 F.2d 278, 288 (5th Cir.1974); Matthews v. Swift and Company, 465 F.2d 814, 818 (5th Cir.1972).’
In the present case counsel for the plaintiff does not expressly allege in his petition or even argued (sic) in his brief that the actions of these committees was arbitrary, capricious or in bad faith. In his brief counsel for plaintiff states that the findings of the committees are ‘suspect’, because the committees are composed entirely of persons appointed by management and because most of the evidence considered by the committees was furnished by management representatives.
The minutes of all of the committee meetings are in evidence, as are the materials which they considered, including correspondence from plaintiff’s attorney which argued the facts essentially as set forth above. The court concludes there is no showing that the actions of the committees were arbitrary, capricious or in bad faith.
The next issue is whether the determination by the committees was supported by sufficient evidence. The record shows the facts presented to the committees are essentially as set forth above. There is little if any dispute as to the facts. Under these facts, the committees determined that Mrs. Hay was not ‘living with’ Mr. Hay at the time of his death, as is required by the contract. It was logical and reasonable for the committees to give to the words ‘living with’ their common and usual meaning, as required by our Civil Code Article 1946. Since Mrs. Hay was legally separated from Mr. Hay and was living in a separate residence from him at the time of his death, the committees concluded plaintiff did not meet the requirement of the contract.[2] It obviously was not considered by the *1359 committee to be sufficient that the parties had decided to become reconciled and planned to live together again. The committee decided to use the objective yardstick which required in clear language that at the time of death the spouse must be ‘living with’ the deceased employee.
The court concludes there was clearly sufficient evidence to support the findings of the committees that plaintiff is not entitled to death benefits.”
Essentially, the plaintiff argues on appeal that the committees as well as the trial court applied too restrictive a meaning to the phrase “living with him at the time of his death”. Plaintiff asserts that under Louisiana law, the parties had reconciled and were therefore living together, as a matter of law, at the time of Mr. Hay’s death.
A review of the Louisiana jurisprudence on this subject does lend some support to plaintiff’s position, in particular, the case of Robinson v. Standard Oil Co. of Louisiana, 194 La. 904, 195 So. 351 (1940). In Robinson, our Supreme Court was called upon to decide what “living together” meant in conjunction with a widow’s suit against her deceased husband’s employer for payments under the employees’ benefit plan. The court found that the husband and wife had not dwelled together for over two years prior to the husband’s death, and had, in fact, lived a considerable distance apart from one another. However, the court concluded that the couple was living together as a matter of law. The court stated:
‘It is true that, from the latter part of 1932 to the date of the husband’s death in November, 1934, this husband and wife did not continuously dwell together under the same roof, but during the greater portion of that time were living a considerable distance apart. But the question whether, as a matter of law, a married couple is ‘living together’ does not hinge on the time they are separated or the distance they are apart, but upon the nature and character of the separation and the intention of the parties respecting it. The relationship of husband and wife, once established, is presumed to continue. The mere fact of separation alone cannot under the law be construed as an intent on the part of either to put an end to that relationship. It is true that long continued physical separation, unexplained, may give rise to an inference that the parties are not living together within the meaning which the term ‘living together’ is generally understood to have. But such an inference might not be drawn if ail the facts pertaining to the separation were known. The intent of the parties is the chief element to be considered in determining whether the relationship, once begun, has been ended.
In legal contemplation, a husband and wife are living together, though driven by stress of circumstances or pecuniary difficulties to separate, if there is no intention on the part of either to sever their marital relations permanently. If there be no estrangement, no intent to sever existing marital relations, no intent to change the relations or obligations created by the contract of marriage, the husband and wife are living together, as a matter of law. This, in substance, is what was held by the Court of Appeal, Second Circuit, in the case of Harris et al. v. Louisiana Oil Refining Corporation, 13 La.App. 416, 127 So. 40.”
As noted above, in Robinson the couple was driven to separate by their physical infirmities and resulting financial difficulties. Their relationship had remained congenial throughout the physical separation. The same may hot be said about the present case. A suit for separation had been filed by Mrs. Hay on the ground of cruelty and it was only a few days before Mr. Hay’s death that the couple exhibited any desire to get back together. Unlike Robinson, in this case the physical separation of the parties followed by the wife’s suit for judicial separation evinced the positive intention, at least on the part of Mrs. Hay, to sever the marital relationship. Therefore, we do not find the Robinson decision controlling in the present case.
*1360 We must bear in mind that this case involved a contract. Under our Civil Code, the words of a contract are to be given their common and usual signification. La. C.C. Art. 1946. As noted by the trial court, the administering committees no doubt gave the term “living with” its common and usual meaning. Clearly, Mr. and Mrs. Hay were not actually living together at the time of his death, albeit, according to Mrs. Hay’s testimony, it was to be only a matter of days before she moved back. In any event, the fact remains that Mrs. Hay had not moved back to the family home at the time of Mr. Hay’s death. All of the pertinent facts, when considered together, raise at least a fact issue concerning whether the parties were “living with” one another within the intendment of the contract at the time of Mr. Hay’s death. See Long v. Southwestern Bell Telephone Company, 442 S.W.2d 462 (Ct. of Civil Appeals of Texas, 1969).
The record reflects that the committees considered essentially the same evidence as was presented in the trial court. The committees were provided with sufficient evidence to decide the plaintiff’s claim and there has been no showing that the committees’ actions were arbitrary, capricious or in bad faith. Under these circumstances, considering the limited scope of judicial review in such cases, we cannot say that the trial court clearly erred in concluding that plaintiff is not entitled to the relief sought.
For the above and foregoing reasons, the judgment of the trial court is affirmed at plaintiff-appellant’s cost.
AFFIRMED.
DOMENGEAUX, J., dissents and assigns brief reasons.

. 644 F.2d 1155 (5th Cir.1981).

. The record does not support the trial judge’s conclusion that the Hays were judicially separated at the time of Mr. Hay’s death. In fact, the separation suit filed by Mrs. Hay, although still pending on the date of Mr. Hay’s death, was dismissed as of non-suit on December 7, 1977.