475 So.2d 1052 (1985)
Mary K. HAY
v.
SOUTH CENTRAL BELL TELEPHONE COMPANY.
No. 85-C-0080.
Supreme Court of Louisiana.
September 10, 1985.
*1053 Larry W. Rivers, Alexandria, Jesse Terrell, Pineville, Rivers & Beck, Alexandria, for plaintiff-applicant.
J. Michael Percy, Trimble, Percy, Smith, Wilson, Foote & Walker, Alexandria, for defendant-respondent.
LEMMON, Justice.
This is an action to recover death benefits under South Central Bell Telephone Company's Plan for Employees' Pensions, *1054 Disability Benefits and Death Benefits. The committee of fiduciaries who administered the Plan denied the claim on the basis that plaintiff was not "living with" her husband, who was defendant's employee, at the time of his death, as required by the Plan. The issue is whether the uncontested evidence of the couple's agreement to resume married life together, after five months of living separate and apart, and their acts in furtherance of that intention established that plaintiff was "living with" her husband within the contemplation of the contract, although the husband died before plaintiff completed her physical move back into the family home.
Plaintiff and her husband had been married for twenty-six years when plaintiff moved out of the family home and into an apartment in June, 1977. She later filed a suit for separation, but the matter was never brought to trial on the merits.
On November 23, 1977, plaintiff's husband invited her to visit him at the family home. He had developed coronary blockage and had been off from work for about six weeks. The couple talked for several hours and discussed the possibility of reconciliation. After they decided to celebrate Thanksgiving together the next day, plaintiff returned to her apartment.
The following day, plaintiff and her husband cooked Thanksgiving dinner at the family home and agreed to resume married life together. During the day, plaintiff notified the manager of her apartment complex that she was giving up her apartment because of the reconciliation.[1] She spent the balance of the day with her husband, but returned to her apartment that night because she had no other clothing with her. She planned to move back into the family home on the following Monday, when her sons would be back in town and could help her with moving her belongings.
The spouses did not see each other on Friday, as each had previously planned errands and appointments. Plaintiff's husband, however, told one of their daughters on Friday evening that they had reconciled and that plaintiff might accompany him on a trip to Texas for medical treatment.
On Saturday, November 24, 1977, plaintiff and her husband spoke by telephone. Later that afternoon, he died of a heart attack.
The Plan, established by defendant as a result of collective bargaining, provided numerous employee benefits. Section 7 of the Plan, relating to death benefits, provided for payment to certain beneficiaries in the event of the employee's death by accident or sickness. Paragraph 4a of Section 7 provided for payment of death benefits to "the spouse of the deceased employee if living with him at the time of his death", or to dependent children or other dependent relatives.[2]
Plaintiff and the other survivors were paid benefits under several provisions of *1055 the Plan, but plaintiff's claim for death benefits was denied by the Employees Benefit Committee, composed of the fiduciaries who administered the Plan.[3] The denial was based on the Committee's determination that the claimant was not living with the employee at the time of his death. This action ensued.
After trial in the district court, the judge dismissed the action, concluding that the determination of a committee of fiduciaries charged with the administration of a private pension plan is not to be disturbed unless the decision was made in bad faith or was based on arbitrary and capricous action. The court of appeal affirmed, relying on the narrow scope of judicial review. 459 So.2d 1356. One judge dissented, agreeing as to the scope of review, but noting that the nature and character of the separation and the parties' intent to resume living together should determine their status. We granted certiorari. 463 So.2d 596.
The initial inquiry is the proper standard for judicial review of the decision of fiduciaries administering a private pension plan. The Plan, from which plaintiff's contractual rights were derived, empowered the Committee to "determine conclusively for all parties all questions arising in the administration of the Plan".
Judicial review of an adjudication by an administrative governmental agency is a limited review which is governed generally by La. R.S. 49:964 G of the Louisiana Administrative Procedure Act.[4] When the contractual rights of parties have been determined by fiduciaries charged with administration of a private pension plan, the scope of judicial review is also limited by a rule which has been derived by analogy from the rule pertaining to the decision of an administrative body. See Davis v. Humble Oil & Refining Co., 283 So.2d 783 (La.App. 1st Cir.1973); Glover v. South Central Bell Tel. Co., 644 F.2d 1155 (5th Cir.1981); Force and Griffith, The Louisiana Administrative Procedure Act, 42 La. L.Rev. 1227 (1982). Thus, the court in such cases has a multifaceted review function which is generally divisible into categories of factual review, procedural review, statutory or constitutional review, and substantive review. Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152 (La.1984).
Clearly, the court's function is not to reweigh the evidence and substitute its judgment for that of the committee. The manifest error standard is therefore used to review the committee's factual findings. However, that standard is not applicable when there are no factual issues. On the other hand, the arbitrariness standard is applicable when the central issue involves the committee's exercise of discretion. The court, nevertheless, retains its traditional primacy in interpreting constitutional or statutory provisions and in enforcing correct procedures. Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152 (La.1984).
*1056 In the present case, plaintiff contends that the decision of the Committee was erroneous on a question of law. The distinction between questions of law and of fact is therefore critical.
Whether the circumstances or events alleged by the claimant are true is a question of fact, and any finding by the fiduciaries that these circumstances did or did not exist or that these events did or did not occur is to be accorded great deference by the court. However, whether undisputed circumstances or events constitute a particular legal status is a question of law, and the court is free to decide such a question with little or no deference to the decision of the fiduciaries.[5] Moreover, when certain issues (even if basically questions of law) may fall within the expertise of the fiduciaries or may be poorly suited for judicial scrutiny, the court may decide to accord considerable deference to the fiduciaries' decision on such issues. See S. Young, 19C Business OrganizationsPension and Profit-Sharing Plans § 20.12[2] (1985); L. Jaffe, Judicial Control of Administrative Action Ch. 14 & 15 (1965); 5 K. Davis, Administrative Law Treatise § 223 (2d ed. 1984). Therefore, determination of the scope of review in an individual case requires an analysis of the particular problem faced by the committee.
The issue in the present case involves the interpretation of a phrase which is used, but not defined, in the contract. The phrase should be interpreted as a matter of law according to the intention of the contract, as well as to the meaning (if any) developed under the judicial decisions and the statutes. The purpose of the language in the contract is the critical factor, and the court should intervene when it is convinced that the application of the phrase urged in opposition to the fiduciaries' decision is the correct application consistent with its purpose. Moreover, the interpretation of a phrase used in a contract is a determination in which the court generally has more expertise than the committee.
The Plan in this case attempted to set forth the categories of beneficiaries eligible for death benefits. The mandatory beneficiaries were limited to the spouse living with the employee, to the unmarried dependent children under the age of twenty-three or incapable of self-support, and to dependent parents living in the same household with the employee or in a separate household provided by the employee. The clear purpose was to provide some degree of continued support to those who were closely related to the employee by marriage or blood and who depended upon him for support. The phrase "living with him at the time of his death" was used to eliminate a spouse, whether dependent or not, who was divorced, legally separated or voluntarily estranged from the employee at the pertinent time.
Here, plaintiff and the employee had lived together in marriage for a number of years before their separation. They were never legally separated or divorced. The employee continued to maintain the family home during the period of separation, and only the will of the parties kept them from living together in the family home. Significantly, when the will of the parties was altered by mutual agreement, there was no bar to their resuming their long-standing prior status of living together in marriage. They were no longer voluntarily living separate and apart, and their status reverted back, as of the time of their agreement and expression of intent, to the status of "living with" each other.[6] *1057 The Committee's contrary decision, based on undisputed facts, is erroneous as a matter of law and must be reversed.
Accordingly, the judgments of the lower courts dismissing plaintiff's action are reversed, and judgment is rendered in favor of plaintiff.[7] All costs are assessed against defendant.
NOTES
[1] The manager confirmed that plaintiff gave notice that she was leaving because she and her husband had reconciled. Plaintiff's husband's co-worker, who had visited the husband on the Wednesday before Thanksgiving, testified that the husband had told him of the reconciliation. Each of the witnesses testified that the spouse with whom he conversed had appeared elated.
[2] The text of Paragraph 4a, pertaining to mandatory beneficiaries, provided:

"In the event of death on or after July 18, 1974, by accident, the maximum Accident Death Benefit specified in Paragraph 1 of this Section, or in the event of death by sickness on or after the above date, the maximum Sickness Death Benefit specified in Paragraph 2 of this Section, shall be paid, subject to the provisions of sub-paragraph (c) of this Paragraph 4, to the spouse of the deceased employee if living with him at the time of his death, or to the unmarried child or children of the deceased employee under the age of 23 years (or over that age if physically or mentally incapable of self-support) who were actually supported in whole or in part by the deceased employee at the time of death, or a dependent parent who lives in the same household with the employee or who lives in a separate household in the vicinity which is provided for the parent by the employee. If the employee leaves two or more of a spouse, a child or children, or a parent, as here described, the Committee, in its discretion, may pay the Death Benefit to or for any one or more of such possible beneficiaries in such portions as it may determine." (Emphasis supplied)
[3] A local committee gathered the information and made the initial recommendation to deny death benefits. The Employees Benefit Committee made the decision whether benefits were due. There was also an Employees Benefit Claim Review Committee, to which plaintiff appealed after filing this suit. The Review Committee considered the initial claim, as well as additional information, and denied the benefits.
[4] La.R.S. 49:964 G provides:

"The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
"(1) In violation of constitutional or statutory provisions;
"(2) In excess of the statutory authority of the agency;
"(3) Made upon unlawful procedure;
"(4) Affected by other error of law;
"(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
"(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge of the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues."
[5] For purposes of judicial review, an administrative agency should make basic findings supported by evidence and ultimate findings which flow rationally from the basic findings, also articulating a rational connection between the facts found and the order issued. Central La. Elec. Co. v. Louisiana Pub. Serv. Comm'n., 437 So.2d 278 (La. 1983). The court under La.R.S. 49:964 G may remand the case for further proceedings when the agency's findings and conclusion cannot reasonably be implied from the record, but the court frequently upholds an agency decision when findings are implicit in the decision.
[6] Previous judicial decisions have recognized that a statutory or contractual requirement of spouses' living together at the time of the employee's death does not necessitate uninterrupted cohabitation in a physical dwelling place. See Robinson v. Standard Oil Co. of La., 194 La. 904, 195 So. 351 (La. 1940), interpreting an employees' benefit plan, and Harris v. Louisiana Oil Ref. Corp., 13 La.App. 416, 127 So. 40 (2nd Cir.1930), interpreting the Workmen's Compensation Act.
[7] Any dispute over the amount or distribution of death benefits should be presented to the district court.