ALFORD, Judge.
The defendant, Board of Trustees, State Employees Group Benefits Program, State of Louisiana, appeals from a judgment in the trial court that reversed a decision by the Claims Review Committee, denying the plaintiff, Mary N. Rosinia, medical benefits under the State Employees Group Benefits Program. The defendant alleges that the trial court erred in failing to affirm the Claims Review Committee finding of a preexisting illness justifying denial of coverage under the terms of the Plan.
The following facts are not in dispute. Mary Rosinia became an employee of the state on March 14, 1983; at that time she did not apply for health insurance under the state program, State Employees Group Benefits Program. On September 14, 1983, Mary Rosinia was examined by Dr. O’Quinn at the Tulane Medical Center Hospital and Clinic; the plaintiff had visited Dr. O’Quinn for a routine annual examination. Dr. O’Quinn diagnosed Mary Rosinia as having the following conditions: third degree prolapse, mild cystocele, and a significant rectoeele. At that time, Dr. O’Quinn recommended to the plaintiff that she have a hysterectomy with posterior repair. Mary Rosinia elected not to undergo surgery as she was suffering from no symptoms. On December 19, 1983, Ms. Rosinia submitted an application for medical benefits coverage to the State Employees Group Benefits Program. Coverage for Ms. Rosinia became effective on June 1, 1984. On September 14, 1984, exactly one year after the diagnosis made by Dr. O’Quinn, Mary Rosinia visited Dr. Ivker for another annual examination; however, at that time, she presented several complaints. Dr. Ivker diagnosed her condition as: first (approaching second) degree prolapse, second degree cystocele, and a recto-cele. Dr. Ivker subsequently performed a hysterectomy, suspension of the bladder, and posterior repair, in a January 3, 1985, operation.
Ms. Rosinia submitted medical bills totaling $10,505.31, incurred as a result of the surgery, to the State Employees Group Benefits Program, for payment under her medical benefits policy; of which the Program claims only $9,299.81 would have been payable had Ms. Rosinia been eligible for coverage. The Program paid $1,580.00, leaving a balance of $7,719.81. Further coverage was denied by the Program, the reason being given that the September 14, 1983, diagnosis by Dr. O’Quinn evidenced a pre-existing condition preventing coverage under the following policy exclusion:
*469 c. Medical expenses incurred during the first 24 months that coverage for the Employee and/or Dependent is in force under this contract will not be considered as covered medical expenses if they are in connection with a disease, illness, accident or injury for which the Covered Person received Treatment or services, or was prescribed drugs, during the 12 month period immediately prior to the effective date of such coverage.
The policy defines “treatment” as follows:
EE. The term Treatment as used herein shall mean all steps taken to effect the cure of a disease, illness, accident or injury and shall include, but not be limited to consultations, examinations, diagnoses, and any application of remedies.
An appeal was made by Ms. Rosinia to the Claims Review Committee and a hearing was held on December 18, 1985. The Committee concluded that the examination, diagnosis and consultation by Dr. O’Quinn constituted “treatment” of Ms. Rosinia which occurred within the twelve months prior to the effective date of coverage. Mary Rosinia filed suit seeking payment of the medical expenses together with statutory penalties and attorney fees. The administrative record was filed in accordance with La.R.S. 49:964(F) and the trial court rendered judgment for the plaintiff, Mary Rosinia, on the record, in the amount of $7,719.81; penalties and attorney fees were denied.
Judicial review of an administrative governmental agency adjudication is limited by La.R.S. 49:964(G)[1]. In reviewing a committee’s factual determinations, the manifest error standard is applied, while the arbitrariness standard is used when the committee’s exercise of discretion is at issue. Hay v. South Central Bell Telephone Co., 475 So.2d 1052 (La.1985). However, as the Hay court points out, “whether undisputed circumstances or events constitute a particular legal status is a question of law, and the court is free to decide such a question with little or no deference to the decision of the fiduciaries.” Hay, 475 So.2d at 1056. It is undisputed in the case sub judice that Mary Rosinia was diagnosed on September 14,1983, as having a prolapse, a cystocele and a rectocele; and that this date was within the twelve month period prior to the effective date of medical coverage referred to in the pre-existing condition exclusion under the Plan. The disputed issue is whether that diagnosis constituted “treatment” under the policy exclusion.
Ms. Rosinia claims that the definition of treatment under the terms of the Plan is ambiguous, arguing that the reference to “consultations, examinations, diagnoses” may be read as applying only to the “cure” process. Ms. Rosinia reasons that since no steps were taken to effect a cure subsequent to the diagnosis by Dr. O’Quinn that no treatment was given within the meaning of the exclusion.
It is well established that courts are bound to give legal effect the terms of an insurance agreement according to the true intent of the parties, and that intent is to be determined from the words of the contract when they are clear and explicit and lead to no absurd consequences. Miller v. Duthu, 470 So.2d 500 (La.App. 1st Cir.), writ denied, 474 So.2d 1310 (La.1985). It is equally well established that any ambi *470 guity in the contract of insurance is to be construed in favor of the insured. Credeur v. Luke, 368 So.2d 1030 (La.1979). However, in order to be held ambiguous, the policy term must be suspectible of two or more interpretations, which are equally reasonable. Elmer v. Washington National Ins. Co., 308 So.2d 312 (La.App. 3rd Cir.1975). The interpretation propounded by Ms. Rosinia cannot be considered reasonable; clearly, the verb phrase, “shall include, but not be limited to consultations, examinations, diagnoses, and any application or remedies”, refers back to the noun, “treatment”.
Ms. Rosinia acknowledges the fact that the present definition of “treatment” in the Plan was drafted in response to the case of Posey v. Board of Trustees, State Employees Group Benefits Program, 426 So.2d 705 (La.App. 1st Cir.1982), writ denied, 429 So.2d 139 (La.1983), but she argues that the amendment was not successful in accomplishing its purpose. We disagree. In Posey, the plaintiff was denied medical benefits coverage by the Program for a June 16, 1980, hysterectomy where she was diagnosed on April 29, 1980, with a second degree uterine prolapse and second degree uterine retroversion, even though no other service or cure was provided until after the effective date of coverage, May 1, 1980. At the time of that dispute the Plan terms did not define the word “treatment” and the major point of contention in the Posey case was whether a diagnosis could be considered “treatment”. The court held that “at the very least the term ‘treatment’ was ambiguous and required a construction which afforded coverage.” Posey, 426 So. 2d at 708.
After Posey, the State Employees Group Benefits Program added the definition of “treatment”, quoted herein, to the Plan provisions. Under the terms of the present insurance agreement, treatment can consist of a single diagnosis of disease, illness, accident, or injury.
The Claims Review Committee found that “(t)he medical expenses incurred by Ms. Rosinia on September 14, 1984, and January 3, 1985, were in connection with the illness for which Ms. Rosinia received Treatment on September 14, 1983.” Webster’s Third New International Dictionary (Unabridged) (1981) Merriam-Webster Inc. defines:
“ILLNESS ... an unhealthy condition of the body or mind....”
“UNHEALTHY ... unhealthful ... evincing abnormality: DISEASED, MORBID....”
“DISEASE ... an impairment of the normal state of the living animal or plant body or of any of its components that interrupts or modifies the performance of the vital functions, being a response to environmental factors (as malnutrition, industrial hazards, or climate), to specific infective agents (as worms, bacteria, or viruses), to inherent defects of the organism (as various genetic anomalies), or to combinations of these factors....”
Words used in an insurance contract are to be understood in the usual and common signification. Jennings v. Louisiana and Southern Life Ins. Co., 290 SO.2d 811 (La.1974). We believe that the Claims Review Committee did not commit manifest error in finding the plaintiff to have had a pre-ex-isting illness.
The testimony of two physicians was presented to the Committee. Dr. Ivker, a gynecologist, testified by deposition that the process that produced Ms. Rosinia’s condition was originally caused by “a stretching and a tearing of the muscles during the childbirth process.” Dr. Ivker further testified that the “process is further enhanced by the aging process when the ligaments get soft and more stretching takes place.” Dr. Lorch, a pediatrician, was called to testify before the Committee, and opined that the plaintiff’s condition was part of a “disease process.” The testimony of Dr. O’Quinn was not taken; however, his “Physician’s Progress Notes”, containing his September 14, 1983, diagnosis, were admitted into evidence.[2] Dr. *471 Ivker explained the notations and diagnosis in Dr. O’Quinn’s notes. Although Dr. Ivker disagreed as to the degree of prolapse that was present in the plaintiff on that date, she expressed no doubt that the conditions existed at that time. While the burden of proof is on the insurer to establish a pre-existing condition, the testimony clearly shows that on September 14, 1983, Ms. Rosinia was diagnosed with a condition that constituted an illness or abnormal condition of the body. See Lake Charles Memorial Hospital v. Sinegal, 440 So.2d 1358 (La.App. 3rd Cir.1983).
The plaintiff places much emphasis on Dr. Ivker’s testimony distinguishing between symptomatic and asymptomatic pelvic relaxation. Dr. Ivker testified extensively on this point explaining that “most parous women” experience pelvic relaxation that can include the dropping of the uterus into the vaginal vault (prolapse) as well as the other conditions suffered by Ms. Rosinia, cystocele and rectrocele. Dr. Ivker testified that unless these conditions produce symptoms in the patient, surgery is not necessary though sometimes recommended by physicians. The record showed that Ms. Rosinia had no symptoms at the time Dr. O’Quinn diagnosed her condition, while Ms. Rosinia showed symptoms of vaginal discomfort, splinting, and urinary stress incontinence at the time Dr. Ivker examined her on September 14, 1984. Dr. Ivker concluded that Ms. Rosinia was not in need of the surgery recommended by Dr. O’Quinn at that time, since her condition was asymptomatic.
An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties. La.Civ. Code art. 1983; Miller v. Duthu, 470 So.2d at 503. Further, the contract of insurance is a voluntary agreement between the parties who may incorporate therein such provisions and conditions as they deem appropriate. Zurich Ins. Co. v. Bouler, 198 So.2d 129, 131 (La.App. 1st Cir.1967). The contract of insurance in the case sub judice excludes coverage when an illness has previously been diagnosed within the twelve months prior to the effective date of the insurance coverage; it is irrelevant that the insured experienced no symptoms from the pre-existing condition at the earlier date. In Galloway v. Standard Life and Accident Ins. Co., 289 So.2d 176 (La.App. 1st Cir.1973), this court declined to hold that “sickness” as used in a mortgage payment protection policy embraced only the acute disabling phase of a condition, instead, we held that the term “sickness” encompassed a dormant chronic condition. Similarly, we now hold that the term “illness”, by definition, is not restricted to symptomatic conditions but may also refer to asymptomatic conditions.
The judgment appealed from is therefore reversed and judgment is rendered herein in favor of defendant, Board of Trustees, State Employees Group Benefits Program, State of Louisiana, and against plaintiff, Mary N. Rosinia, dismissing plaintiff’s suit at her cost.
REVERSED AND RENDERED.

. La.R.S. 49:964(G) provides:
G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge of the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.

. Hearsay evidence is admissable in administrative proceedings, therefore, the notes of Dr. O'Quinn were properly admitted in proof of his diagnosis on September 14, 1983. See Fisher v. *471 Louisiana State Board of Medical Examiners, 352 So.2d 729 (La.App. 4th Cir.1977), writ refused, 353 So.2d 1338 (La.1978).