789 So.2d 573 (2001)
Walter BURNETTE
v.
Richard L. STALDER, et al.
No. 2000-CP-2167.
Supreme Court of Louisiana.
June 29, 2001.
*574 Walter Burnette, Jane L. Johnson, Charles D. Williams, New Orleans, Counsel for Applicant.
Richard P. Ieyoub, Attorney General, Doug Moreau, District Attorney, Baton Rouge, Andre C. Castaing, New Orleans, Counsel for Respondent.
KIMBALL, J.[*]
This court granted a writ of certiorari in this case to review the final decision of the Louisiana Department of Public Safety and Corrections in Administrative Remedy Procedure (CARP) No. LSP-97-6145. The plaintiff, Walter Burnette, a state prisoner, sought to transfer funds in excess of $250.00 from his savings account to his drawing account. After his request was denied, the plaintiff unsuccessfully initiated and exhausted his Administrative Remedy Procedure No. LSP-97-6145, as required by La.Rev.Stat. 15:1171, et seq. Thereafter the plaintiff filed a pro-se petition for judicial review in the district court, which was dismissed by the court. On appeal, the First Circuit Court of Appeal affirmed the district court's ruling.

FACTS AND PROCEDURAL HISTORY
The plaintiff, who is currently serving a ninety-nine year sentence at the Louisiana State Penitentiary at Angola, requested to *575 have funds in excess of $250.00 in his prison savings account transferred to his drawing account, asserting that such transfer was authorized by La.Rev.Stat. § 15:874(4)(c), which provides:
When an inmate's savings account attains a balance of at least two hundred fifty dollars, the inmate may deposit future compensation into either his savings account or his personal drawing account. When an inmate selects to have future compensation deposited to his personal drawing account as provided herein, and subsequently a court of competent jurisdiction orders payment of court costs in a matter to which the inmate is a party causing the inmate's account balance to be less than two hundred fifty dollars, thirty percent of future compensation shall be deposited to his drawing account and seventy percent shall be distributed toward payment of the court costs.
When the plaintiff's request was denied, he initiated this action by filing a complaint under the Department of Public Safety and Corrections Administrative Remedy Procedure, as required by La.Rev.Stat. § 15:1177, et seq. The plaintiff received notice of the agency's final decision denying him the requested relief on May 3, 1998. The Secretary of the Department of Corrections denied the plaintiff's request on the grounds that La.Rev.Stat. § 15:874 does not provide for the transfer of funds in the inmate's savings account in excess of $250.00, but only allows that, after an inmate's savings account attains a balance of $250.00, the inmate may deposit any "future compensation" earned after the effective date of the statute into his drawing account. To bolster its interpretation of La.Rev.Stat. 15:874, the Secretary relied on the Department of Corrections Rule No. B-09-0030(6)(A)(3), which allows only those inmates serving life sentences to transfer existing funds in excess of $250.00.[1]
The plaintiff then filed a pro-se petition for judicial review, as well as a motion to proceed in forma pauperis on June 2, 1998. The case was referred to Commissioner Allen J. Bergeron, Jr., of the Nineteenth Judicial District, who held a hearing on the petition for review on December 14, 1998. In a Commissioner's Recommendation, Commissioner Bergeron rejected the plaintiff's argument that the Department erroneously interpreted La.Rev. Stat. § 15:874 in its regulation B-09-003(6)(A)(3), where the department accorded only inmates serving life sentences the right to transfer all funds in excess of $250.00 from their savings account to their drawing accounts.
The Commissioner first noted that there are valid reasons why inmates serving life sentences are treated differently in this regard, as they have no need to accumulate a fund which they can take with them upon release from prison. Regardless, the *576 Commissioner opined that the plaintiff is not entitled to relief because (1) while the statute does discriminate between different classes of prisoners, the discrimination is not of such an invidious nature that it violates either statutory or constitutional rules or jurisprudential interpretations of those rules, and (2) La.Rev.Stat. § 15:874 only authorizes the deposit of future compensation into the drawing accounts of all inmates. The Commissioner concluded that the plaintiffs claim that the statute permits him to transfer all funds above the amount of $250.00 from his savings account to his drawing account is not supported by the Department regulations or the statute, and, therefore, recommended that the plaintiffs petition be dismissed with prejudice at plaintiffs cost. On January 5, 1999, the district court adopted the Commissioner's Recommendation and rendered judgment against the plaintiff.
On appeal, the First Circuit concluded that La.Rev.Stat. § 15:874 and the department regulations were clear and unambiguous and did not permit the plaintiff, who was serving a numbered sentence, to transfer funds in his account prior to the effective date of that legislation. The majority of the appellate court agreed with the Commissioner that to treat inmates serving life sentences and inmates serving numbered services differently with respect to their ability to withdraw excess savings funds does not lead to absurd consequences, given that inmates serving life sentences will be in prison their entire lives and have little need for savings.
The court of appeal additionally rejected the plaintiffs argument that it is absurd to treat prisoners who already had funds in their savings account in excess of $250.00 on the effective date of La.Rev.Stat. § 15:874 differently from prisoners who attain a balance of $250.00 in their savings account after the effective date. The court concluded that the fact that some prisoners may have more savings than others inaccessible to them, except as provided by law or regulation, is not an absurd consequence.
However, the court of appeal dissent found that:
[t]he intent of the legislature is expressly stated in the preamble to Act 528 which provides that the purpose of the act was "to provide for deposits and uses of monies in inmate's savings accounts once the account balance reaches two hundred fifty dollars." The legislature clearly intended to insure a balance in an inmate's account of $250 for the payment of future obligations, such as court costs, and to provide funds to the inmate on the inmate's release. While it is correct that the statute does not specifically state that an inmate may transfer an existing balance in his or her savings account in excess of the $250 minimum, it clearly allows for an inmate's election to use amounts in excess of that minimum by depositing future compensation into the inmate's drawing account. I believe it is clear that the phrase "future compensation" was intended to mean any amount earned by the inmate over and above the $250 minimum, not any amount earned from the date of the enactment of the statute. To hold otherwise, as does the majority, leads to absurd consequences.
Under the majority opinion, all inmates serving numbered sentences who had accumulated more than $250 in their savings account when Act 528 was enacted must retain those amounts in the savings account even after the date the statute was enacted. Unless they are serving a life sentence, they may only elect to deposit amounts earned subsequent to the enactment of the statute in their drawing accounts. As Appellant *577 points out, under such an interpretation, new inmates (inmates incarcerated after the enactment of Act 528) will be able to have all funds in excess of $250 placed in their drawing accounts, but inmates who were incarcerated prior to the enactment of Act 528, will be required to maintain their existing savings account, even if it is in excess of $250. I do not believe that the legislature intended such a result.
We agree and now reverse the lower courts.

STANDARD OF REVIEW
While judicial review of an adjudication by an administrative governmental agency is generally a limited review which is governed by the Louisiana Administrative Procedure Act, we have held that this court "retains its traditional primacy in interpreting constitutional or statutory provisions and in enforcing correct procedures." In re Louisiana Health Service and Indem. Co., 98-3034, pp. 5-6 (La.10/19/99), 749 So.2d 610, 613 (quoting Hay v. South Cent. Bell Tel. Co., 475 So.2d 1052, 1055 (La.1985)). Because the instant action involves statutory construction, this court conducts a de novo review of the Department's and the lower courts' interpretation of La.Rev.Stat. § 15:874.

LAW AND DISCUSSION
Legislation is the solemn expression of legislative will and, therefore, the interpretation of legislation is primarily the search for the legislative intent. See Succession of Boyter, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128 (citing Cat's Meow, Inc. v. City of New Orleans Through Dept. of Fin., 98-0601 (La.10/20/98), 720 So.2d 1186; Hutchinson v. Patel, 93-2156 (La.5/23/94), 637 So.2d 415). When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written and no further interpretation may be made in search of legislative intent. La. Civ.Code art. 9; Boyter, 756 So.2d at 1128-29. However, if a statute is ambiguous or susceptible of more than one reasonable interpretation, statutory construction is necessary. Touchard v. Williams, 617 So.2d 885, 888 (La.1993)
The function of statutory interpretation and the construction to be given legislative acts rests with the judicial branch of government. Touchard, 617 So.2d at 888 (citing State v. Sissons, 292 So.2d 523 (La.1974); Ethyl Corp. v. Collector of Revenue, 351 So.2d 1290 (La.App. 1st Cir.1977)). When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. Civ.Code art. 10; Touchard, 617 So.2d at 888. Louisiana Rev. Stat. § 1:3 also provides that, when interpreting the revised statutes, courts shall read and construe statutory words and phrases in their context and in accordance with the common and approved usage of the language. See also La.Code Civ. Proc. art. 5053 (same).
Accordingly, the starting point for the interpretation of any statute is the language of the statute itself, while being mindful that the paramount consideration for statutory interpretation is always the ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact the law. Boyter, 756 So.2d at 1129; Touchard, 617 So.2d at 888. Therefore, when the apparent meaning of the statute appears doubtful or the language can reasonably be interpreted in more than one manner, courts must search deeper to discover the legislative intent. Touchard, 617 So.2d at 888.
In the present case, the dispute concerns the meaning of the phrase, "future *578 compensation," in La.Rev.Stat. § 15:874(4)(c). The Department, the Commissioner, and both lower courts interpreted the language to provide that only compensation earned in the future, or compensation earned after the statute was enacted, may be deposited in an inmate's drawing account once the inmate has attained a savings account balance of $250.00. The plaintiff, on the other hand, argues that "future compensation" means compensation in excess of $250.00.
Prior to 1997, La.Rev.Stat. § 15:874(2) provided that an inmate's compensation would be distributed equally between his savings and drawing account. Act 528 of the 1997 Louisiana legislative session amended this provision regarding the equal distribution of compensation by adding the language, "except as otherwise provided in Paragraph (4) of this Section." La.Rev.Stat. § 15:874(2). Paragraph (4)(c) now provides the language in controversy:
When an inmate's savings account attains a balance of at least two hundred fifty dollars, the inmate may deposit future compensation into either his savings account or his personal drawing account. When an inmate selects to have future compensation deposited to his personal drawing account as provided herein, and subsequently a court of competent jurisdiction orders payment of court costs in a matter to which the inmate is a party causing the inmate's account balance to be less than two hundred fifty dollars, thirty percent of future compensation shall be deposited to his drawing account and seventy percent shall be distributed toward payment of the court costs.
We note at the outset that this legislative amendment significantly expanded an inmate's ability to access his money and discretion in spending it by allowing for the deposit of all of an inmate's compensation in his personal drawing account, if the inmate's savings account has attained a balance of $250.00, in contrast to the prior equal distribution requirement, regardless of the savings account balance.[2] The issue before us now, however, is whether, the inmate's statutory right to direct funds into his personal drawing account, once he has attained a balance of $250.00 in his savings account, applies to compensation earned at any time by the inmate or only to compensation earned after the statute's effective date.
While the phrase "future compensation," if isolated from the other language of the statute, can reasonably be interpreted in more than one manner, to read that phrase as meaning only compensation earned after the statute's enactment, as did the lower courts and the Department, not only leads to absurd results, but also contravenes the legislative purpose in enacting Act 528. When the phrase "future compensation" is read in context with the other language of the statute, as required by La.Code Civ. Proc. art. 5053 and La.Rev. Stat. § 1:3, it is evident that "future compensation," is modified by the language, "when an inmate's savings account attains a balance of at least $250.00." La.Rev. Stat. § 15:874(4)(c). Furthermore, in considering the common and prevailing meaning of the word "future," it is apparent that the compensation being referred to is compensation received at a later time or a time that is to come. See Webster's Ninth New Collegiate Dictionary (1983). Thus, when reading the sentence together, "future *579 compensation" is understood to be any compensation received by the inmate after the inmate's savings account has attained a balance of $250.00. The statute's language establishes only one condition precedent to an inmate's right to deposit of funds into his drawing account: that the inmate's savings account reach a balance of $250.00. The defendant's interpretation of "future compensation," or wages earned after the statute's enactment, only makes sense if the phrase is isolated from its statutory context. Additionally, as the plaintiff points out, nowhere in the statute is there any explicit or implicit reference to the date of enactment. Nor is enactment designated anywhere as the signal event that triggers the inmate's right to deposit funds into his drawing account.
Next, we note that the statute also expressly states that an "inmate's compensation account shall be handled and accounted for" pursuant to the statute's provisions, thereby leaving little discretion to the Department to regulate the management of inmate compensation accounts. La.Rev.Stat. § 15:874 (emphasis added). Furthermore, while the Department regulations regarding compensation accounts accord different classes of inmates different rights based on the length of their sentences, La.Rev.Stat. § 15:874 does not distinguish between different classes of inmates. Rather, the statute clearly mandates that all inmates' accounts are to be handled and accounted for pursuant to its provisions, regardless of the terms of their sentences.
In light of the statute's mandatory provisions, the lower courts' and the Department's interpretation of the statute lead to an absurd consequence. If the statute was, in fact, intended to refer only to compensation earned after the statute's enactment, it would create an additional distinction between inmates based on the date their savings accounts reach a balance of $250.00, although the statute itself professes to govern the handling of, and accounting for, all inmates' compensation accounts. Pursuant to the lower courts' interpretation, inmates who had accumulated funds in excess of $250.00 in their savings account prior to the statute's enactment are unable to access any of those funds, whereas inmates whose savings accounts reach a $250.00 balance after the statute's enactment are entitled to deposit all excess compensation into their personal drawing accounts. There is no statutory basis for such a distinction between inmates, and such a result is absurd in light of the mandatory language in the statute.
The defendants also support their argument with respect to the meaning of "future compensation" by pointing to the fact that the statute uses the language "to deposit" with respect to compensation, not "to transfer." Therefore, the defendants argue, and the lower courts held, that the statute only authorizes an inmate "to deposit" future funds into their drawing account, not "to transfer" pre-existing funds.[3] However, that interpretation not only leads to the absurd classification of inmates discussed above, but also defeats *580 the purpose of Act 528, which is to expand inmate access to their funds.
As noted previously, Act 528 was passed to amend La.Rev.Stat. § 15:874, which then required that all inmate compensation be deposited equally between an inmate's drawing and savings accounts. The legislature's intent to allow inmate access to their funds in excess of $250.00 is clear from both the title of the Act, which reads, "PrisonsState PenitentiaryInmates' Savings Accounts Exceeding Two Hundred Fifty Dollars," and the express statement in the Act's preamble that the legislative purpose was "to provide for deposits and uses of monies in inmate's savings account once the account balance reaches two hundred fifty dollars." 1997 La. Act 528 (emphasis added). It is apparent that the legislature's purpose in enacting Act 528 was to ease the previous limits imposed on the use of inmate's savings accounts, while, at the same time, insuring a balance of $250.00 in an inmate's savings account for the payment of future obligations, such as court costs, and to provide funds to the inmate upon release.
Based on the foregoing, we find that it is clear that the phrase "future compensation" in the statute refers to any funds earned by an inmate after that inmate has reached the $250.00 minimum required balance in his savings account and does not mean only compensation in excess of the $250.00 balance earned after the statute was enacted. We further agree with the court of appeal dissent that, while the statute does not explicitly provide that an inmate may transfer an existing balance in his savings account in excess of the $250.00 minimum balance, it clearly allows for an inmate's election to use amounts in excess of that minimum by depositing those funds into his personal drawing account. To hold otherwise, as did the lower courts and the Department, is to ignore the language of the statute and the legislature's purpose in enacting Act 528. Accordingly, the lower courts' rulings upholding the Commissioner's recommendation to dismiss the plaintiff's petition are reversed.
At this point, we note that the plaintiffs petition for judicial review initially sought injunctive relief in the form of an order that the Department allow him to transfer the balance in his savings account in excess of $250.00 into his drawing account. Because the plaintiff has, in fact, been allowed to transfer funds in excess of $250.00 from his savings account to his drawing account, pursuant to an amendment to the departmental regulation passed after the plaintiff filed this suit, the plaintiffs claim for injunctive relief is moot. However, in addition, the plaintiff has sought damages relating to the delay in allowing him access to his money and to recover the court costs he has been obligated to pay in the proceedings below. Because the plaintiff was entitled to transfer funds under La.Rev.Stat. § 15:874, even in the absence of the new departmental regulation, his claims for damages relating to the Department's initial denial of his request and court costs were not mooted by the fact the Department finally allowed him to transfer his money after he filed the instant suit. Therefore, we remand the case to the trial court, so that it may consider the plaintiffs outstanding claims for costs and damages.

CONCLUSION
The court of appeal is reversed. The case is remanded to the trial court for further proceedings on the issue of damages and court costs in light of our opinion.
REVERSED, and REMANDED.
NOTES
[*] Philip C. Ciaccio, Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon.
[1] Department Regulation No. B-09-003(6)(A)(3) provides:

Upon approval of the Warden, inmates serving a life sentence may transfer amount [sic] in excess of $250.00 from their savings account to their drawing account. Generally, all outstanding debts, (i.e. owed to the department, the courts, victims, etc. or other obligations which would otherwise be payable out of the savings account) must be satisfied prior to the transfer unless otherwise approved by the Warden.
For all other inmates, when their savings account attains a balance of $250.00, future compensation may be deposited into either the savings or drawing account. When an inmate elects to have future compensation deposited into his drawing account and is subsequently ordered to pay court costs which reduces the savings account balance to less than $250.00, 30% of future compensation shall be deposited into the drawing account and 70% shall be distributed toward payment of any remaining court costs.
[2] Inmates may not draw upon their savings accounts, prior to release or parole, for expenditures other than those few allowed by La.Rev.Stat. § 15:874 or department regulations. However, inmates have more discretion in spending money in their personal drawing accounts.
[3] We also note that, while the Department argues that the statute only allows for the deposit of excess compensation earned after the effective date of La.Rev.Stat. § 15:874 into an inmate's drawing account, the Department itself promulgated regulations that allow inmates to circumvent that interpretation of the statutory language by allowing for allegedly impermissible transfers of excess funds, regardless of when the compensation was earned, depending on the term of the inmates' sentences. See Department Regulation No. B-09-003(6)(A)(3). Thus, the Department's regulations are in direct contravention of the Department's own purported understanding of the statute, as well as that of the lower courts.