JOY COSSICH LOBRANO, Judge.
hln this case, the State of Louisiana, Department of Revenue, Office of Alcohol and Tobacco Control, and Troy Hebert, individually and in his capacity as Commissioner of the Office of Alcohol and Tobacco Control (hereinafter collectively “State”), appeal the following two judgments granting preliminary injunctions in favor of Robert G. Harvey, Sr. (“Harvey”), in his capacity as managing member/sole owner of Wagner’s Chef, L.L.C., Aberta, Inc. (d/ b/a Chicken Box Cafeteria & Market), and B-Xpress Elysian Fields, L.L.C.: (1) the December 30, 2013 judgment prohibiting the State from enforcing the State’s September 11, 2013 order suspending alcohol permits at Harvey’s three businesses (“First Injunction”); and (2) the June 20, 2014 amended judgment mandating the State to issue renewal alcohol, beer, and tobacco permits and licenses to Harvey’s three businesses (“Second Injunction”) and holding the State in contempt for violating the First Injunction.
These appeals have been consolidated with the State’s initial writ application, in which the State seeks review of the December 30, 2013 judgment overruling its exceptions of no cause of action, no right of action, and failure to join indispensable parties. In addition, because the instant contempt order does not|2impose sanctions or disciplinary action, it is an interlocutory ruling and not a final, appealable judgment; [1] thus, we have converted that portion of the second appeal challenging the contempt order to an application for supervisory writs.[2]
For the reasons which follow, we hold the following: (1) the judgments granting the First and Second Injunctions are reversed; (2) the State’s first writ is denied in part and granted in part, affirming the district court’s overruling of the exceptions of no right of action and failure to join indispensable parties and reversing the district court’s overruling of the exception of no cause of action; and (3) the State’s second (converted) writ is granted, reversing the district court’s contempt ruling against the State.

*690
FACTUAL BACKGROUND

These consolidated matters stem from the revocation of alcohol permits at three New Orleans gas station/convenience stores: Chicken Box Cafeteria & Market,[3] B-Xpress, and Wagner’s Chef. In June 2012, the State, through its Office of Alcohol and Tobacco Control (“ATC”), investigated a complaint that the Chicken Box store was being operated by Omar Ham-dan (“Mr, Hamdan”), who | ¡¡was not a registered owner and who had previously been convicted of a felony. As a convicted felon, Mr. Hamdan is disqualified from holding an alcohol permit under La R.S. 26:80(A)(5).[4] '
State records reflect that the stores were'owned by FHH Properties, L.L.C., whose sole member was Fatmah Hamdan (“Mrs. Hamdan”), the spouse of Omar Hamdan. Louisiana Revised Statute 26:80(A)(11) disqualifies the spouse of a convicted felon, from holding an alcohol sales permit, and in Mrs. Hamdan’s application she denied having any spouse. Investigation by the State revealed that management and operation of the stores was carried out by Mr. Hamdan, and that Mr. and .Mrs. Hamdan were married, filed their taxes as a married couple, and that based upon their marriage Mrs. Hamdan had been able to get a United States visa as the spouse of a U.S. citizen. The investigation also revealed that the Wagner’s Chef and B-Xpress stores were also solely owned by Mrs. Hamdan, and suffered from the same deficiencies as Chicken Box— namely, they were owned by a disqualified spouse of a convicted felon. The ATC issued administrative citations to all three entities. In response, and notwithstanding her defense through counsel that because her marriage had taken place outside of the U.S. she was not married for purposes of U.S. and Louisiana law, on April 11, 2013 Mrs. Hamdan appeared with counsel before the ATC and agreed to sell all three businesses. The ATC ordered her to have no interest in any business with an alcohol permit.
| ¿Four days later, on April 15,2013, Mrs. Hamdan filed a petition for divorce. Also shortly following the appearance, Mrs. Hamdan sold the stores to her husband’s 'nephew, Fady Abusaud (“Mr. Abusaud”), who worked as a clerk at the store, under terms that left her'with a significant financial interest in the businesses. The Ham-dans’ attorney, plaintiff Harvey, loaned Mr. Abusaud $50,000.00 for the down payment on the businesses.
The ATC issued a second round of citations to the three businesses, and on May 31, 2013, held a second administrative hearing with Mr. Abusaud present. At that hearing, Mr. Abusaud could not discuss the financial situation of any of the three businesses, and testified that he did not have control, over the bank accounts, which were still in Mrs. Hamdan’s name. Concerned that Mr. Abusaud was not a bona fide owner, the ATC Commissioner ordered him to reten in five days with financial records confirming he was the true owner of the businesses, suspending the alcohol permits in the interim.
*691 Before the five days had elapsed, on June 4, 2013, Mrs. Hamdan re-sold the stores to the Hamdans’ attorney, plaintiff Harvey, in consideration for his offsetting a $500,000.00 debt they owed him for legal fees. On June 6, 2013, Harvey provided the ATC with documents required to transfer the applicable licenses to himself. On June 10, 2013, Harvey appeared before the ATC Commissioner and testified that he was the sole owner of the businesses, that the Hamdans had no further involvement with the businesses, and that Harvey was seeking an ethics opinion establishing that his purchase of the businesses was in good faith. Based on this, the ATC Commissioner reinstated the permits for all three businesses.
| ¿However, in July 2013, the ATC again investigated a complaint that Mrs. Ham-dan, a disqualified individual, continued to have an interest in Aberta, Inc., contrary to the 'ATC Commissioner’s prior order. It was then discovered that the Hamdans were continuing to run the Chicken Box, and that the purchase arrangement between Mrs. Hamdan and Harvey involved the creation of two classes of Aberta, Inc. stock: Class A, which purported to own real estate, and was owned 100% by Mrs. Hamdan; and Class B, which purported to own the Chicken Box store and its assets, including the alcohol permit, and which was owned 100% by Harvey. After this arrangement was deemed unacceptable to the ATC, at some point in July or August, Mrs. Hamdan sold 95% of her stock to Harvey, retaining a 5% ownership interest. Because this arrangement still gave Mrs. Hamdan a- financial stake, it was deemed non-compliant, and on August 23, 2013, a violation citation was issued to Aberta Inc., for “failure to maintain qualifications/spouse is- a convicted felon/permits revoked for 2 years.” The citation stated that an ATC administrative hearing on thé matter would be held on September 4, 2013.[5] At Harvey’s request, the hearing date was later changed to September 10, 2013.[6] At the hearing, which lasted nearly ten hours, Mrs. Hamdan testified that Mr. Hamdan,ran the businesses, and that while she testified that she had divorced Mr. Hamdan in an effort to retain the alcohol permits, she still lived in the same home and referred to him as her husband. Mr. Hamdan testified that he believes he still owns |fithe stores, and two former employees testified that Mr. Hamdan still ran the businesses.
On September 11, 2013, the ATC Com-' missioner revoked the permit to sell alcoholic beverages at the Chicken Box store, in an order that directed that no state or local permit covering the premises at 3101 Elysian Fields be issued for one year, under La. R.S. 26:97.[7] Pursuant to La. R.S. 26:94,[8] the ATC Commissioner also revoked the permits of B-Xpress and Wagner’s Chef,'also ordering that no state *692 or local permits issue for those premises for one year.

PROCEDURAL HISTORY

On September 13, 2013, Harvey filed a petition for injunctive relief against the State of Louisiana, Department of Revenue, Office of Alcohol and Tobacco Control, and Troy Hebert, individually and in his capacity as Commissioner of the Office of Alcohol and Tobacco Control, seeking to enjoin the ATC Commissioner’s order revoking the permits. According to Harvey’s petition, the prohibition in La. R.S. 26:80(D),[9] regarding a convicted felon’s involvement in a business where alcohol is the principal commodity sold, is of no consequence in this situation because no more than 8% of the income from any of the three businesses at issue is from alcohol sales. The petition also alleged numerous | -Improprieties by the ATC Commissioner in his handling of this matter, and alleged that based on those alleged improprieties, the September 11, 2013 order should be declared an absolute nullity and a new commissioner should be appointed to hear the proceeding de novo.
A temporary restraining order was issued on September 13, 2013, the same day Harvey’s petition for injunctive relief was filed.[10] On September 23, 2013, the State filed a motion to dissolve the temporary restraining order, declinatory exceptions of insufficiency of service of process and lack of personal jurisdiction, and peremptory exceptions of nonjoinder of a party, no cause of action and no right of action. On December 30, 2013, the district court rendered judgment, overruling the State’s peremptory exceptions.[11] The district court also granted the First Injunction in favor of Harvey enjoining, restraining, and prohibiting the State
from enforcing its September 11, 2013 Order of Commissioner Hebert in ATC Case No. 2013-1602 in any way suspending, revoking and/or taking any action whatsoever against permit numbers 3693004424, 3693008616, and 3693009016 the businesses Wagner’s Chef, L.L.C., Aberta, Inc. (d/b/a Chicken Box Cafeteria & Market), and B-Xpress Elysian Fields, L.L.C. presently enjoy; and further enjoining and prohibiting the ATC from preventing or otherwise impeding the sale of the businesses at issue.[12]
On December 30,2013, the State filed its motion and order for appeal from the district court’s judgment granting a preliminary injunction, as well as its notice |8of *693 intention to apply for supervisory writs seeking review of the overruling of its exceptions. This appeal was lodged on February 10, 2014,[13] and on March 19, 2014, it was consolidated with the related writ application.[14]
Meanwhile, beginning in the summer of 2013 and concluding in the spring of 2014, the Department of Revenue conducted an audit of Aberta, Inc. and B-Xpress. It determined that , those entities had collected sales taxes from their customers but had failed to remit them. In the case of Aberta, Inc, $463,664.45 was owed, and in the case of B-Xpress, $288,106.23 was owed. The Department of Revenue .therefore denied .sales clearances to the entities.
On May 21, 2014, Harvey attempted, through his agent, Brian Kelley, to renew the alcohol permits for all three - businesses, which were set to expire as a matter of course on May 31, 2014. However, on May 30, 2014, the ATC Commissioner issued an order denying the alcohol permits due to the outstanding- tax liabilities owed to the Louisiana Department of Revenue, pursuant to La. R.S. 26:80(E), 26:86, 26:280(E), and 26:283, which mandate that if sales taxes are owed by a permittee, and a sales tax clearance from the Department of Revenue is not issued, the permit shall be denied.
On June 5, 2014, Harvey filed his second Petition for Temporary Restraining Order and Temporary and Permanent Injunction on behalf of Aberta, Inc. and B-Xpress,[15] to prevent the ATC Commissioner from enforcing the order denying 1 ?lrenewal of the alcohol permits based on the absence of the sales tax clearance, as well as- a Rule to Show Cause requesting ■ the court to hold defendants in contempt for violating the First Injunction. The State responded with exceptions of no right-of action, non-joinder of an indispensable party, no cause of action, and improper cumulation of actions, and also filed a motion to dissolve the Temporary Restraining Order, as well as oppositions to the request for a preliminary injunction and the contempt rule. On June 20, 2014,-the district court granted the Second Injunction in an order which stated, inter alia:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that upon finding that the defendants, the State of Louisiana, Department of Revenue, Office of Alcohol and Tobacco Control (“ATC”) and Troy Hebert are in willful contempt of this Court’s Judgment/Preliminary Injunction rendered herein on September 25, 2013, the Rule for Contempt filed herein by Robert G. Harvey, Sr., ... is hereby GRANTED; and therefore,
■ IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the State of Louisiana, Department of Revenue, Office of Alcohol and Tobacco Control (“ATC”) and Troy Hebert shall immediately issue the renewal alcohol, beer, and tobacco pérmits and licenses to Aberta, Inc., and B-Xpress Elysian Fields, LLC, as applied for on May 21, 2014, pending further orders of this Court.
*694 The district court found that the State had acted on the tax assessment issue because of the ongoing litigation and not because, of any tax liability. The district court concluded “that the defendants [were] attempting to indirectly do what this Court ordered them not to do directly,” that the jeopardy assessment was knowingly issued for the purpose of circumventing the district court’s prior injunction, and found defendants to be in contempt of court for violating the First | ^Injunction. As previously noted, the State’s appeal from that order[16] has been consolidated with the previous writ application and first appeal, and the portion addressing the contempt ruling converted to a supervisory writ application.[17]

DISCUSSION

I. First Application for Supervisory Writs seeking review of December 30, 2013 order overruling peremptory exceptions of no right of action, non-joinder of a party, and no cause of action.

In the State’s first writ application, it argues that the district court erred in denying, its peremptory exceptions of no right of action, nonjoinder of a party, and no cause of action.[18] As previously noted, due to the dismissal of Wagner’s Chef, our opinion only addresses arguments as they relate to Aberta, Inc. and B-Xpress. Because all of these issues present questions of law, our review is de novo. Snider v. Louisiana Med. Mut. Ins. Co., 2013-0579, p. 6 (La.12/10/13), 130 So.3d 922, 928.
The State’s exception of no right of action challenges Harvey’s right to bring an action for injunctive relief on behalf of Aberta, Inc. and B-Xpress, the entities whose alcohol permits were revoked by the ATC in its September 11, 2013 order. The State argues that Aberta, Inc. and B-Xpress were the proper parties to assert a claim for injunctive relief in this case, and not plaintiff Harvey. “An exception of | uno right of action assumes the petition states a valid cause of action, and questions whether the plaintiff in the particular case has a legal interest in the subject matter of the litigation.” Bruzeau v. Wells Fargo Bank, N.A., 12-0075, p. 5 (La.App. 4 Cir. 8/22/12), 99 So.3d 1010, 1014 (citations omitted). As the Louisiana Supreme Court has held, “[a] party seeking an injunction must have standing to sue.... To have standing the plaintiff must assert an adequate interest in himself, which the law recognizes, against a defendant having a substantial adverse interest. An action can only be brought by a person having a real and actual interest, which he asserts.” Howard v. Admin. of Tulane Educ. Fund, 07-2224, pp. 7-8 (La.7/1/08), 986 So.2d 47, 54 (internal quotations and citations omitted). For purposes of the exception, all well-pleaded facts in the petition are taken as true. Miller v. Thibeaux, 14-1107, p. 6 *695 (La.1/28/15), 159 So.3d 426, 430 (citation omitted).
In the petition for injunctive relief as it relates' to Aberta, Inc., the petitioner is identified as “Robert G. Harvey, Sr. (“Harvey”), in his capacity as ... sole owner, President and Secretary of Aberta, Inc. (d/b/a Chicken Box Cafeteria & Market).” A shareholder, even a sole shareholder, has no separate or individual right of action against third persons for wrongs committed against or damaging to the corporation. Bayou Fleet P’ship v. Clulee, 13-934, p. 6 (La.App. 5 Cir. 9/10/14), 150 So.3d 329, 333-34, citing Glod v. Baker, 02-988 (La.App. 3 Cir. 8/6/03), 851 So.2d 1255, writ denied, 03-2482 (La.11/26/03) 860 So.2d 1135. However, in addition to stating his capacity as that of sole owner, Harvey also identified that he was bringing this action as President and Secretary of Aberta, Inc.
112La. C.C.P. art. 694 states: “An agent has the procedural capacity to sue to enforce a right of his principal, when specially authorized to do so.” La. C.C.P. art. 700 states:
When a plaintiff sues as an agent to enforce a right of his principal, or as a legal representative, his authority or qualification is presumed, unless .challenged by the defendant by the timely filing of the dilatory exception. ■ When so challenged, > the plaintiff shall prove his authority or qualification on the trial of the exception.
“The dilatory exception of lack of procedural capacity raises the issue of want of capacity of the plaintiff to institute and prosecute the action and stand in judgment, and/or challenges the authority of a plaintiff who appears in a purely representative capacity.” Gibbs v. Magnolia Living-Center, Inc., 38, 184, p. 2 (La.App. 2 Cir. 4/7/04), 870 So.2d 1111, 1113, citing Horrell v. Horrell, 99-1093 (La.App. 1 Cir. 10/6/00), 808 So.2d 363. The record .does not show that the State filed an exception of lack of procedural-capacity to challenge Harvey’s authority to bring this action as to Aberta, Inc. in a representative capacity. Nonetheless, we note that there is no evidence in the record to dispute Harvey’s assertion that he is the President of Aber-ta, Inc. Although . Harvey did not use the word “agent” in identifying his role in filing this suit, we find that- the statement that he was suing in his capacity as President and Secretary of .Aberta, Inc. was sufficient to establish his right of action to bring the petition for injunctive relief as to Aberta, Inc. in a representative capacity.
In the petition for injunctive relief as it relates 'to B-Xpress, the petitioner is identified as “Robert G. Harvey, Sr., (“Harvey”), in his capacity as ... managing member/sole owner of B-Xpress Elysian Fields, L.L.C.”
La. R.S. 12:1311 states:
|1sExcept as otherwise provided in the articles of organization, the business of the' limited liability company shall be managed by! the members, subject to any provision in a written operating agreement restricting or enlarging the management rights and duties of any ■ member or group or class of members.
Because Harvey filed the petition as to B-Xpress in his capacity as managing member/sole owner,.we find that La. R.S. 12:1311 confers upon him a right to assert claims as to that entity. Thus, we find no error in the district court’s denial of the State’s exception of no right of action as to Harvey’s.right-to bring the action for injunctive relief as to the ATC’s actions regarding the alcohol permits -of Aberta, Inc. and B-Xpress Elysian Fields, L.L;C.
*696 We also find no error in the district court’s denial of the State’s exception of failure to join indispensable parties. This exception was based on the fact that the revoked alcohol permits were in the names of Aberta, Inc. and B-Xpress Elysian Fields, L.L.C., and not in Harvey’s name.
La. C.C.P. art. 641 states:
A person shall be joined as a party in
the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.
Because Harvey is the sole owner, President, and Secretary of Aberta, Inc. and the managing member and sole owner of B-Xpress, we find that the district court did not err in overruling the State’s exception of failure to join indispensable parties.
[ uThe State also filed an exception of no cause of action based on the fact that Harvey’s petition for injunctive relief seeks relief against ATC Commissioner Hebert individually, and not solely in his capacity as the ATC Commissioner of the Office of Alcohol and Tobacco Control. The State contends that Harvey’s request for injunc-tive relief against the ATC Commissioner is based solely upon decisions made by the ATC Commissioner in the course of his official duties, and thus he cannot be liable in an individual capacity. In contrast, Harvey’s petition contends that “the herein complained of actions involve ultra vires acts and deprivation of civil rights under color of law.” The petition further alleges, inter alia, that the ATC Commissioner’s actions in revoking his alcohol permits are the result of the ATC Commissioner’s being influenced by a competing store owner who was “the driving force behind the ATC’s actions against Harvey and the businesses at issue.”
■ “The exception of no cause of action raises the question of whether the law affords any remedy to the plaintiff under the allegations of the petition.” Bruzeau, 12-0076, p. 5, 99 So.3d at 1014. The exception is triable on the face of the petition and attached documents, and for the purpose of determining the issue raised by the exception, the well-pleaded facts in the petition must be accepted as true. Id., 12-0075, p. 6, 99 So.3d at 1014 (citations omitted).
“Personal or individual capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law causing the deprivation of a constitutional right. A state official is individually liable for violating the constitutional rights of his victim.” Driscoll v. Stucker, 2004-0589, 27-28 (La.1/19/05), 893 So.2d 32, 52 (citations omitted). Thus, to state a cause of action against the ATC Commissioner in his individual capacity, Harvey must |1fishow that the face of the petition, taking all well-pleaded facts as true, alleges that the ATC Commissioner acted under color of state law to deprive Harvey of a constitutional right.
Even accepting the allegations of the petition as true, the only constitutional deprivation alleged with any particularity against the ATC Commissioner is a violation of due process due to the failure to provide adequate notice of the September 10, 2013 hearing to B-Xpress and the sub *697 sequent revocation of B-Xpress’s alcohol permit. Because we find, as discussed more fully infra, that the lack of a separate notice to B-Xpress does not violate plaintiffs due process rights, he has failed to state a claim. Therefore, we find that the district court erred in overruling the State’s exception of no cause of action with respect to the claims against ATC Commissioner Hebert in his individual capacity.

II, Appeal from Order of December 30, 2013 granting First Injunction.

In its first appeal,[19] the State argues that the district court erred in issuing the First Injunction in Harvey’s favor. The State cites the broad power given to the states under the 21st Amendment to the United States Constitution to regulate and control the sale of alcoholic beverages, and contends that La. R.S. 26:106 does not permit injunctive relief to an aggrieved party but limits an aggrieved party to a devolutive appeal. The State also argues that Harvey did not meet the requirements for the issuance of a preliminary injunction. Specifically, the State argues that Harvey did not establish that he will suffer irreparable injury, is not entitled to the relief sought, and has not made a prima facie showing that he will prevail on the merits. The State’s argument regarding Harvey’s alleged failure to establish | ^irreparable injury is based on the State’s contention that the damages alleged by Harvey can be measured monetarily.
Before turning to the merits of the injunctive relief question, we address the State’s contention that La. R.S. 26:105 and 106 deprive the district court of authority to entertain Harvey’s motions for injunctive relief. We disagree. In considering the question, one of statutory construction, we apply a de novo review standard. Burnette v. Stalder, 2000-2167, p. 5 (La.6/29/01), 789 So.2d 573, 577.
La. R.S. 26:105 provides that “[d]eci-sions of the commissioner in withholding, suspending, or revoking permits and of local authorities in withholding permits are final and binding on all parties unless appealed in the manner provided in R.S. 26:106 and finally reversed by the courts.” Section 106 further provides that
A. Any party aggrieved by a decision of the commissioner to withhold, suspend, or revoke a permit or of the local authorities to withhold a permit may, within ten days of the notification of the decision, take a devolutive appeal to the district court having jurisdiction of the applicant’s or permit-tee’s place of business, proposed or actual as the case may be. Such appeals shall be filed in the district courts in the same manner as original suits are instituted therein. The appeals shall be tried de novo.
[[Image here]]
B. Within ten calendar days of the signing of the judgment by the district court in any such appeal case, the commissioner or the applicant for a permit or permittee, as the case may be, may devolutively appeal the judgment to the appellate court of proper jurisdiction. These appeals shall be perfected in the manner provided for in civil cases and shall be devolutive only. If the district court determines that the decision of the commissioner or of the local authorities in withholding, suspending, or revoking the permit was in error, the decision of the commissioner or local authorities shall not be voided if the commissioner or local authorities take an appeal to the *698 court of appeals in the time provided for suspensive appeals. ■
117The State argues that the foregoing provisions reflect a legislative intent to limit an aggrieved party’s means of relief to a devolutive appeal, and thus that the grant of injunctive relief-suspending the decision of the ATC Commissioner pending the appeal — is inconsistent with this law. , However, this argument overlooks the plain language of La. R.S. 26:108, which provides:
The courts of this state shall have jurisdiction to issue restraining orders and writs of injunction restraining the commissioner as provided in the constitution, but no writ or order shall issue before a decision has been made ' by the commissioner either withholding the application for a permit, or suspending or revoking a permit under' the provisions of this Chapter.
Id. (emphasis added). Thus, under section 108, the state courts have jurisdiction to issue restraining orders as provided in the Constitution, and the Constitution specifically confers original jurisdiction on district courts for all civil matters. La. Const., art. V, § 16. Likewise, the Constitution mandates that “[a] judge may issue writs of habeas corpus and all other needful writs, orders, and process in aid of the jurisdiction of his court.” La. Const, art. V, § 2. Accordingly, reading the relevant .portions of Title 26 together, including section 108 (which the State neglected to cite in its initial brief), we conclude that the statutory scheme does not foreclose in-junctive relief.
' The legislative history of section 108 supports this interpretation. Prior to the 1962 revisions, La. R.S. 26:106 provided:
When the board or local authorities have withheld the issuance of a permit or when the board has summoned a per-mittee to show why his permit should not be suspended or revoked, the courts of this state have no jurisdiction to interfere in any manner or to issue restraining orders and writs of injunction restraining the board from proceeding under the provisions of this Chapter. The jurisdiction of the courts is restricted to appeals as provided in R.S. 26:104.
|1sLa. R.S. 26:106 (1951) (superseded) (emphasis added). -- ■
Acts 1962, No. 463, § 9 revised the Alcoholic Beverage Control Law to include section 108 as: it reads today, unequivocally authorizing restraining orders and writs of injunction. The provision conforms the law with the rationale enunciated by the First Circuit decision in Wimberly v. White, 54 So.2d 869 (La.App. 1st Cir.1951). In Wimberly, the Court was presented with a case in which the District Court refused injunctive relief following revocation of an alcoholic beverage iicense, based on the pre-1962 Alcoholic Beverage Control Law which included the aforementioned language “the courts of this state have no jurisdiction to interfere in any manher or to issue restraining orders and writs of injunction.” Wimberly, 54 So.2d at 875, quoting La. R.S. 26:106 (Section 64 of Act 360 of 1948). Addressing this language, the Court concluded that “our interpretation of that section, and this is evidently in line with the view taken by the Supreme Court,[20] is that the section was intended only to prevent the courts from interfering with the conducting of hearings by the Board of Alcoholic Beverage *699 Control as provided for in the act, and nothing more.” Id, (footnote supplied; emphasis in original). The Court reasoned that interpreting section 106 in the manner suggested by the State herein ■ conflicted with Article VII, Section 2 of the Louisiana-Constitution, which at the time provided that “The Supreme Court, the Court of Appeal, and each of the judges thereof, ... may also in aid of their respective jurisdictions, original, appellate, or supervisory, issue writs of mandamus, certiorari, prohibition, quo warranto, and all other needful writs, orders |1aand process....”[21] Thus, the Court found that “if the section [relied upon] from the Alcoholic Beverage Control Law should be so construed as to limit the supervisory powers of our appellate courts and Supreme Court beyond the authority given by the Constitution, it would to.that extent be invalid.” Wimberly, 54 So.2d at 875.[22] . •
We also note that a provision parallel to the one discussed in Wimberly, likewise attempting to limit the courts’ jurisdiction to enter injunctions relative to alcoholic beverage permits, was specifically found to be an unconstitutional limitation on the prerogatives of the courts. See, Roksvaag v. Reily, 237 La. 1094, 113 So.2d 285 (1959). In Roksvaag, the plaintiff sought to enjoin the Collector of Revenue, from withholding a retail beer permit. In support of its position, the Collector of Revenue pointed to the provisions of La. R.S. 26:304, which at that time provided:
In cases involving the withholding, suspending, or revoking of a permit under the provisions of this Part, the courts of this state have no jurisdiction to interfere in any manner or to issue restraining orders and writs of injunction restraining the collector, the local authorities, or. the board from-proceeding under the provisions < of this Part. The action of the collector, the local .authorities, or the board in such cases shall not be enjoined or superseded by any court nor suspended or stayed during the pendency of appeals to the courts.
In deciding the matter, the Supreme Court observed that “the Civil District Court for the Parish of Orleans, by virtue of the power emanating from Art 7, § 2, of the Constitution ... may also in aid of their respective jurisdictions ... 'issue writs of mandamus, certiorari, prohibition, quo warranto, and all other needful writs, orders and process ...” Id. at 287 (quotations omitted). Further, “any act of the legislature ... that infringes or trenches upon the constitutional prerogatives of 12nthe courts, cannot stand.” Id. (quotations omitted).. Therefore, the court found that it “necessarily follows that Section 304 ... is unconstitutional being in contravention of Article 7, Section 2 of the Constitution of Louisiana.” Id. at 288.
We find that the enactment of current La. R.S. 26:108, subsequent to the decisions in Wimberly and Roksvaag, evidences a clear legislative intent that the statutory scheme in the Alcoholic Beverages Control' Law does not foreclose in-junctive relief to aggrieved parties, provided all other requirements for an injunction are met. ■ Accordingly, the State’s contention that La. R.S. 26:105 and 106 deprive the courts of the ability to grant injunctive relief is without merit.[23]
*700 Turning to the merits of the State’s appeal from the grant of the First Injunction, a trial court has broad discretion in the granting or denial of a preliminary injunction, and its ruling will not be disturbed on review absent clear abuse of that discretion. Yokum v. Pat O’Brien’s Bar, Inc., 12-0217, p. 6 (La.App. 4 Cir. 8/15/12), 99 So.3d 74, 80, citing Smith v. West Virginia Oil & Gas Co., 373 So.2d 488, 493 (La.1979) (other citations omitted). “That broad standard is, of [ai course, based upon a conclusion that the trial court committed no error of law and was not manifestly erroneous or clearly wrong in making a factual finding that was necessary to the proper exercise of its discretion.” Id., p. 7, 99 So.3d at 80 (citations omitted).
The purpose of a preliminary injunction is to preserve the status quo pending a full trial on the merits. Dynamic Constructors, L.L.C. v. Plaquemines Par. Gov’t, 2015-0271, p. 2, n. 1 (La.App. 4 Cir. 8/26/15), 173 So.3d 1239, 1241, n. 1, writ denied, 2015-1782 (La.10/30/15), 178 So.3d 562. “Before issuing a preliminary injunction, the trial court should consider whether the threatened. harm to the plaintiff outweighs the potential for harm or inconvenience to the defendant and whether the issuance of the preliminary injunction will disserve the public interest.” Chandler v. State, Dep’t of Transp. & Dev., 2002-1410, p. 6 (La. App. 1 Cir. 3/28/03), 844 So.2d 905, 909.
The specific requirements for obtaining a preliminary injunction are as follows:
To obtain a preliminary injunction, the applicant must show that the damage he will suffer may be irreparable if the injunction does not issue, that he is entitled to the relief sought, and must make a prima facie showing that he will prevail- on the merits of the case.
The jurisprudence interpreting article 3601 establishes that, while the trial court has broad discretion in deciding whether to grant injunctive relief, injunction is an extraordinary remedy and should only issue where the party seeking it is threatened with irreparable loss without adequate remedy at law. Irreparable injury means the applicant cannot be adequately compensated in money damages for his injury or suffers inju *701 ries, which cannot be measured by pecuniary standards.
Licfro v. State, Dept. of Revenue, Office of Alcohol and Tobacco Control, 03-0737, p. 4, 859 So.2d 739, 742 (citations omitted).
|22We find that the district court abused its discretion in issuing the First Injunction. By enjoining the State from “taking any actions whatsoever” related to Harvey’s alcohol permits for Chicken Box and B-Xpress, the injunction goes much farther than preserving the status quo. Such broad language not only limits the ATC in pm-suing its investigation related to the Hamdans’ suitability under the statute, it renders the ATC powerless to take any action against Harvey’s permits, no matter what illegal conduct or improprieties might occur at the stores, and thus improperly enjoined the ATC from performing its duty to regulate and control the sale of alcoholic beverages in order to protect the public interest and to ensure the safety of our citizens. As such, the district court erred in failing to consider the potential harm to the public by stripping the ATC of its authority to exercise any regulatory power with respect to Harvey’s alcohol permits. On this basis alone, the issuance of the First Injunction was in error.
Additionally, Harvey failed to establish that he will suffer irreparable injury. As stated above, irreparable injury means the applicant cannot be adequately compensated in money damages for his injury, or suffers injuries that cannot be measured by pecuniary standards. Licfro, 03-0737, p. 4, 859 So.2d at 742. Harvey’s damages all derive from the loss of alcohol sales. Such losses are readily susceptible to quantification in money damages. Therefore, money damages can compensate any injury incurred as a result of the ATC order revoking the alcohol permit. Because Harvey has not established the first element necessary to prove entitlement to a preliminary injunction, i.e., that he will suffer irreparable injury as a result of the revocation of his alcohol permit, we find that the district court abused its discretion in granting the preliminary injunction enjoining the 1 ¡^enforcement of the ATC’s September 11, 2013 order as it relates to Aberta, Inc. and B-Xpress, L.L.C.
We also address Harvey’s allegation that because he did not receive a separate notice directed to B-Xpress, his due process rights were violated by the revocation of B-Xpress’s alcohol permit. In connection with this argument, we note that “[n]o citizen has an inherent right to sell alcoholic beverages, and the business may be permitted under conditions such as will limit to the utmost the evils associated therewith.” Deer Enterprises, L.L.C. v. Parish Council of Washington Parish, 2010-0671, p. 10 (La.1/19/11), 56 So.3d 936, 944, citing City of Baton Rouge v. Rebowe, 226 La. 186, 75 So.2d 239, 241 (1954). “Selling alcoholic beverages therefore may be considered a privilege.” Id. We also acknowledge that those authorized by law to exercise this privilege are entitled to due process. Paillot v. Wooton, 559 So.2d 758, 761 (La.1990). “Both state and federal law provide that if one is to be deprived, based on a factual determination, of an interest that is protected, due process requires, at a minimum, oral and written notice of the evidence supporting the proposed deprivation and the opportunity to present a contrary version of the facts.” Id. (emphasis added).
With respect to B-Xpress, Harvey’s due process rights are not implicated because its alcohol permit revocation was not made due to a factual determination, but rather by operation of law. Louisiana Revised Statute 26:94 provides that “[i]f a person holds more than one permit and *702 any one of them is suspended or revoked, the commissioner may suspend or revoke all of his permits.” Harvey, who owns 100% of the stock of Aberta, Inc. and is the sole member of B-Xpress, L.L.C., and who has successfully maintained that he is the proper party to bring this suit, and has testified repeatedly that he is the only owner of both businesses, is the de facto ^holder of both permits. Thus, under La. R.S. 26:94, revocation of Aberta, Inc.’s alcohol permit grants the ATC Commissioner authority to revoke B-Xpress’s alcohol permit. Put another way, B-Xpress’s alcohol permit was not revoked based on any findings made in a proceeding relative to B-Xpress for which notice was required; it was revoked as a consequence of Aberta, Inc.’s revocation, as clearly provided for by statute, and for which Harvey received more than adequate notice.
More generally, we observe that with respect to due process, it is well-settled that “[t]he giving of notice of a hearing by administrative agencies need only be reasonable and need not meet the exacting requirements for notice in judicial proceed-ings_Notice must serve the purpose of informing the parties of the nature and time of the proceedings, the purpose of the hearing — i.e., the possible consequences or the manner in which interests may be affected — , and the method of presenting objections to the administrative action.” Tafaro’s Inv. Co. v. Div. of Hous. Imp., 261 La. 183, 259 So.2d 57, 60-61 (1972); see also, Buras v. Bd. of Trustees of Police Pension Fund of City of New Orleans, 430 So.2d 237, 238 (La.App. 4 Cir.1983). Because the only person authorized to act on behalf of B-Xpress is the same individual solely authorized to act on behalf of Aber-ta, Inc., notice to Aberta, Inc. necessarily reaches B-Xpress. For all of the foregoing reasons, we find that due process was not offended in this case.[24] Accordingly, the district court erred in granting the First Injunction.

\9SfII, Appeal of Order of June 12, 2014 granting Second Injunction.

In this appeal, the State takes issue with the district court’s grant of the Second Injunction for its failure to adhere to the First Injunction, specifically that portion of the Order of December 30, 2013 which enjoined the ATC Commissioner from “in any way suspending, revoking and/or taking any action whatsoever against permit numbers 3693004424, 3693008616, and 3693009016, the businesses Wagner’s Chef, L.L.C., Aberta, Inc. (d/b/a Chicken Box Cafeteria & Market), and B-Xpress Elysian Fields, L.L.C. presently enjoy; and further enjoining and prohibiting the ATC from preventing or otherwise impeding the sale of the businesses at issue.” As previously noted, notwithstanding this order, on May 30, 2014, ATC Commissioner Hebert denied the alcohol renewal permit applications of Aberta, Inc. and B-Xpress on the grounds that each entity lacked a sales tax clearance from the Department of Revenue.
Harvey responded on June 5, 2014 by filing his second Motion for Temporary Restraining Order and Temporary and Permanent Injunction. On the same date, Harvey filed a Rule to Show Cause seeking a contempt ruling based on the State’s alleged violation of the First Injunction. Following a hearing on Harvey’s filings, as well as on the exceptions and a Motion to *703 Dissolve the Temporary Restraining Order filed by the State, held on June 12, 2014, the district court denied the State’s exceptions, as well as its Motion to Dissolve the Temporary Restraining Order. The district court granted Harvey’s Rule for Contempt and further ordered the State to “immediately issue the renewal alcohol, beer, and tobacco permits to Aberta, Inc. and B-Xpress,” as well as enjoining the State from “taking any action whatsoever against the permits and licenses of 1 gfiAberta, Inc. and B-Xpress Elysian Fields, L.L.C. for any action, transaction, and/or anything else alleged to have occurred on or before September 25, 2013.”
The State’s appeal from this judgment re-urges the' argument it made in connection with the appeal of the First Injunction, namely, that pursuant to La. R.S. 26:105 and 106, the district court did not have the authority to issue injunctive relief to suspend the denial of the renewal permits to Aberta, Inc. and B-Xpress. Additionally, the State argues that the district court erred in granting the mandatory and prohibitory preliminary injunctions. First, the State claims that the procedural requirements necessary to issue a mandatory injunction were not met in the present case, as the district court did not conduct a full trial on the merits to determine whether Harvey is entitled to mandatory injunc-tive relief and' refused to consider oral testimony. Second, the State claims that Harvey failed to prove that he was entitled to any injunctive relief, whether mandatory or prohibitory, because he did not establish that he will suffer irreparable harm; Harvey has not identified any non-monetary harm that may befall him in the absence of injunctive relief; and Harvey has not established that he can succeed on the merits of his claim. In order to prevail on his claim that Aberta, Inc. and B-Xpress were wrongfully denied renewal permits, Harvey must prove that the companies had a sales tax clearance from the Department of Revenue, and according to the State, he cannot prove this fact.
First, we note that for the reasons discussed above in connection with the First Injunction, supra, we read Title 26 as not depriving the district court of authority to grant injunctive relief.
_J^Second, as in the case of the First Injunction, we find that Harvey cannot show the irreparable harm necessary for the issuance of a preliminary injunction. “Irreparable injury means the applicant cannot be adequately compensated in money damages for his injury or suffers injuries, which cannot be measured by pecuniary standards.” Licfro, 03-0737, p. 4, 859 So.2d at 742. As was'the case with the First Injunction, Harvey’s damages are in the- nature of lost profits from the result of the revocation. of the alcohol licenses at the two stores in question, and as such are susceptible to monetary compensation. Accordingly, the required showing of irreparable harm has not been made, and Harvey is not entitled to injunc-tive relief.
In so concluding, we have considered, and rejected, the argument by Harvey that an exception to the usual requirement of irreparable harm applies in this case. Specifically, Harvey argues that -there is an exception to the “irreparable harm” requirement when an injunction is sought to enjoin actions that are clearly contrary to expressed law, citing Thibodeaux v. Conoco Phillips Co., 2006-1282 (La.App. 3 Cir. 3/7/07), 952 So.2d 912 wit denied, 2007-0725 (La.6/29/07), 959 So.2d 518 and Bossier v. Lovell, 410 So.2d 821 (La.App. 3 Cir. 02/03/1982), writ denied 414 So.2d 376 (La.1982). In the instant case, Harvey argues that the Second Injunction was based on the State’s violation of the First Injunction, and that its actions in doing so, found to be in contempt of court, are by definition “clearly contrary” to law.
*704 Harvey is correct that the Supreme Court has established an exception to the irreparable harm requirement. Jurisich v. Jenkins, 99-0076, p. 4 (La.10/19/99), 749 So.2d 597, 599. However, to circumvent the irreparable harm requirement, “[t]he jurisprudential rule requires three findings ... first, that the conduct violates a 1 ¡^prohibitory law (ordinance or statute) or the constitution; second, that the injunction seeks to restrain conduct, not order it; and third, that Harvey has met the low burden of making a prima facie showing that he is entitled to the relief sought. Yokum, 2012-0217 at pp. 8-9, 99 So.3d at 81 (citations omitted). Neither the first or second of these requirements is met.
The conduct enjoined by the Second Injunction—failing to adhere to the first injunction—may be contrary to the First Injunction, but it is not violative of a prohibitory law—i.e., an ordinance, statute, or the constitution. Further, the Second Injunction is mandatory in nature, not prohibitory. It orders conduct by the ATC Commissioner, namely, the issuance of renewed alcohol permits. Accordingly, Harvey is not entitled to any exception to the normal requirements for injunctive relief, and as with the First Injunction, Harvey must have shown irreparable harm for the Second Injunction to issue. Because we find that Harvey’s harm is compensable by money damages, the district court erred in granting the Second Injunction. We therefore pretermit discussion of the other issues raised in the State’s appeal of the Second Injunction.

TV. Supervisory Review of the portion of the June 12, 2014 order holding the State in contempt.

The State appeals the district court’s finding that it was in contempt of its September 25, 2013 First Injunction arguing that the denial of renewal permits did not violate the First Injunction, since the State was statutorily prohibited from issuing renewal permits to Aberta and B-Xpress absent the sales tax clearances from the Department of Revenue. As previously mentioned, we have converted the State’s appeal challenging the contempt order to a supervisory writ application because the instant contempt order, which imposes no sanctions or disciplinary | {¡¡¡action, is not a final, appealable judgement.[25] Because the State’s appeal was filed within the delays for the application for supervisory writs, it is within our supervisory jurisdiction and we review it accordingly. See, e.g., Mandina, Inc. v. O’Brien, 13-0085, p. 7 (La.App. 4 Cir. 7/31/13), 156 So.3d 99, 103, writ denied, 13-2104 (La.11/22/13), 126 So.3d 485.
“A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority.” La.C.C.P. art. 221. Contempt may be either direct or constructive. Id. Constructive contempt encompasses, the “the willful disobedience of any lawful judgment order, mandate, writ, or process of the court.” La. C.C.P. 224(2). The State was found in contempt for the willful disobedience of a court order, and thus, for constructive contempt.
A civil contempt proceeding is one in which “the court seeks to force a person into compliance with a court order.” Billiot v. Billiot, 2001-1298, p. 4 (La.1/25/02), 805 So.2d 1170, 1173 (citations omitted). In the present ease, the district court’s contempt finding was made in an effort to force compliance with its prior order, the *705 First Injunction; it is therefore civil in nature.
The burden of proof for civil contempt is by a preponderance of the evidence, and reviewing courts apply a manifestly erroneous standard. Joseph v. Entergy, 2005-0263, p. 5 (La.App. 4 Cir. 8/3/05); 918 So.2d 47, 51. “Although a district court has discretion to determine whether to find a person guilty of constructive contempt of court, a finding that a person willfully disobeyed a court order in violation of La.Code of Civil Proc. art. 224(2) must be based on a finding that the accused violated an order of the court “intentionally, knowingly, and [¡^purposefully, without justifiable excuse.” Lang v. Asten, Inc., 2005-1119, p. 1 (La.1/13/06); 918 So.2d 453, 454.
While we recognize the wide discretion of the district court in making a contempt finding, on the record before us we find that the district court erred in its finding that the State violated the First Injunction intentionally, knowingly, and purposefully, and without justifiable excuse, when it denied the renewal permits on May 30, 2014. To the contrary, the record reflects that based upon its reasonable interpretation of La. R.S. 26:80(E), 26:86, 26:280(E), and 26:283, all of which purport to remove the discretion of the ATC Commissioner to grant an alcohol permit to an entity lacking a sales tax clearance, the State reasonably believed that the law required denial of the permits. It further contends — also reasonably — that because the issues surrounding the tax obligations arose after the issuance of the First Injunction, it presumed that they were not contemplated by the First Injunction. Accordingly, we find that the State had a clear justifiable reason for the denial of the renewal permits, and thus the contempt finding was made in error.
For all of the foregoing reasons, we reverse the district court’s granting of the preliminary injunction issued on December 30, 2013 (First Injunction), and reverse the preliminary injunction issued on June 20, 2014 (Second Injunction). The writ application seeking review of the district court’s December 30, 2013 order overruling of the State’s peremptory exceptions consolidated with this appeal is denied in part and granted in part; the converted writ application seeking review of the district court’s contempt finding of June 20, 2014 is granted. Accordingly, |aTwe remand these matters to district court for further proceedings consistent with this opinion.
PRELIMINARY INJUNCTIONS REVERSED; FIRST WRIT DENIED IN PART AND GRANTED IN PART: CONVERTED WRIT GRANTED; REMANDED.
JENKINS, J., concurs in the results.

. The State has requested that its appeal of the contempt order be converted to a supervisory writ application. This Court has permitted the conversion of an appeal to a supervisory writ application when the motion to appeal was filed within the 30-day delay for supervisory writs. See, e.g., Mandina, Inc. v. O’Brien, 13-0085, p. 7 (La.App. 4 Cir. 7/31/13), 156 So.3d 99, 103, writ denied, 13-2104 (La.11/22/13), 126 So.3d 485. The contempt order appealed by the State was made within the 30-day period for seeking a supervisory writ.

. Chicken Box Cafeteria and Market is the trade name for Aberta, Inc, Throughout this opinion, when referring to the store, we use Chicken Box, when referring to the legal entity, we use Aberta, Inc. ’

. La. R.S. 26:80(A) provides:
Applicants for state and local permits of all kinds shall demonstrate that they meet all of the following qualifications and conditions:
[[Image here]]
(5) Have not been convicted of a felony under the laws of the United States, the state of Louisiana, or any other state or country.

. Apparently, at some point after the issuance of the August 23, 2013 citation, Harvey purchased the remaining 5% from Mrs. Hamdan.

. While the record reflects that the hearing was held on September 10, 2013, the hearing transcript bears a date of September 9, 2013. The discrepancy is immaterial but we note it for the record.

. La. R.S. 26:97 provides: “When a permit is revoked for any legal cause, the commissioner may, at the same time, order that no state or local permit shall be issued covering the same premises until one year after the date of revocation.”

.La. R.S. 26:94 provides: "No permit shall be withheld, suspended, or revoked except for causes specified in this Chapter, If a person holds more than one permit and any one of them is, suspended or revoked, the commissioner may suspend or revoke all of his permits.”

. La. R,S. 26:80(D) states: "If the applicant’s business is to be conducted wholly or partly by one or more managers, agents, servants, employees, or other representatives, those persons shall also possess the qualifications required of the applicant and shall furnish verification of suitability in accordance with Paragraph (H)(6) of this Séction; however, convicted felons may be employed by an applicant if, in the applicant’s business, alcoholic beverages are not the principal commodities sold, handled, or given away.”

. The State filed a writ application in this Court seeking review of the district court’s issuance of the temporary restraining order. This Court denied the writ application, declining to exercise supervisory jurisdiction. Robert G. Harvey, Sr., et al. v. State of Louisiana, Department of Revenue, et al., unpub., 13-1282 (La.App. 4 Cir. 9/24/13).

. The December 30, 2013 judgment revised the district court’s original December 19, 2013 judgment to incorporate language in accordance with the parties’ agreement and the district court’s oral ruling.

. The December 30, 2013 judgment also denied as moot the State’s exceptions of insufficiency of service of process and lack of personal jurisdiction, and denied the State's motion to dissolve the district court’s earlier temporary restraining order and Harvey's, motion to allow live testimony. Those rulings are not before us in this appeal.

. The appeal was docketed in this Court as 2014-CA-156.

. The writ application was docketed in this Court as 2014-C-35.

. On May 30, 2014, after the first appeal in these consolidated matters was filed, the State, along with intervenor Wagner World and Wagner’s Chef, L.L.C., filed a joint motion for partial dismissal in this Court, seeking to dismiss the State's appeal as to Wagner’s Chef, L.L.C. The motion stated that Harvey had sold his interest in Wagner’s Chef, L.L.C., on November 15, 2013. On February 4, 2015, this Court granted the motion and dismissed the State’s appeal as to Wagner’s Chef, L.L.C.

. Docketed as 2014-CA-977 c/w 2014-CA-978 c/w 2014-CA-979.

. Subsequent to the filing of the first appeal, Harvey learned that the Louisiana Department of Revenue had seized all bank accounts of Aberta, Inc. and B-Xpress in an effort to satisfy tire alleged delinquent taxes. Both companies sought Chapter 11 bankruptcy relief in the bankruptcy court for the Eastern District of Louisiana on June 20, 2014. Accordingly, this matter was stayed. On September 4, 2014, the bankruptcy proceedings involving Aberta and B-Xpress were dismissed, resulting in a remand to state court on November 6, 2014, and the lifting of the stay in this Court on November 18, 2014.

.The record does not show that Harvey filed an opposition to the State’s exceptions in the district court, and Harvey did not file a response to the State’s writ application in this Court,

. 2014-CA-156.

. The Supreme Court in Wimberly had granted a stay order requested by the defendant, staying execution of the Board’s order until final determination of the case on appeal — apparently agreeing that suspending the Commissioner's ruling pending the appeal was not foreclosed by the statute. Wimberly v. White, 54 So.2d at 875.

. The 1974 Louisiana Constitution re-codified Art. VII, § 2 to Art. V, § 2.

. While Wimberly addressed the limits of La. R.S. 26:106 in connection with the supervisory jurisdiction provided in the Constitution, as suggested by Roksvaag, discussed infra, .its rationale applies equally to the district court’s original jurisdiction, likewise provided in the Constitution.

. We have also considered the State’s argument based on Metro Riverboat Assoc. v. Louisiana Gaming Control Bd., 2001-0185, p. 6 *700 (La.10/16/01), 797 So.2d 656, 660, that "the existence of a specific statutory procedure generally implies a legislative intent that the special statutory procedure be the exclusive means of obtaining judicial review in the situations to which it applies.” We find it inapplicable to the matter sub judice for several reasons. First, the quoted provision acknowledges that the existence of a special statutory procedure "generally implies” legislative intent — it does not prove it in all cases. Second, the aggrieved party in Metro Riverboat sought appellate review of the Gaming Board’s administrative decision, not injunc-tive relief (as in the present case).- As the Supreme Court noted, because the Metro plaintiff asked "that the board's decision be reversed and remanded, rather than enjoined,” it sought direct appellate review governed by the statutory scheme of the Louisiana Gaming Control Law, La. R.S. 27:1, et seq., not adjudication in the first instance, over which the district court could exercise its original jurisdiction. 2001-0185, p. 6, 797 So.2d at 661 (emphasis added). Finally, in making the quoted statement, the Metro Riverboat Court specifically rested upon its prior decision in Loop, Inc. v. Collector of Revenue, 523 So.2d 201, 203 (La.1987), which held that "[w]hen the statute upon which [a litigant] relies establishes a specific procedure for judicial review of an agency’s action, a litigant may invoke the reviewing court’s jurisdiction only by following the statutorily prescribed procedure, unless there can be found within the act a genuine legislative intent to authorize judicial review by other means.” 523 So.2d at 203 (emphasis added). We find that in the present case, section 108 of the Alcoholic Beverage Control Law reflects a genuine legislative intent to authorize judicial review by other means.

. Because Harvey has not alleged a viable due process claim or any other constitutional violation, and because a cause of action against ATC Commissioner Hebert in his indi.vidual capacity requires Harvey to allege a constitutional violation, he has failed to state a cause of action against ATC Commissioner Hebert in his individual capacity, as we concluded supra in our discussion of the State's first writ application.

. See supra, notes 1 & 2.